UNITED STATES, Appellee

v

LEE A. JOHNSON, JR., Seaman Apprentice, U. S. Navy, Appellant

19 USCMA 464, 42 CMR 66

No. 22,648

May 28, 1970

*Captain Jeffery W. Maurer,* USMC, argued the cause for Appellant, Accused.

*Lieutenant James E. Akers,* JAGC, USNR, argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Charles J. Keever,* USMC, *Lieutenant Colonel Lawrence G. Bohlen,* USMC, and *Captain Patricia A. Murphy,* USMC.

### Opinion of the Court

DARDEN, Judge:

In the sentencing stage of this case the military judge permitted the prosecution to introduce evidence that the appellant had received nonjudicial punishment under Article 15 of the Uniform Code of Military Justice, 10 USC § 815. The military judge also certified that introduced evidence in the form of pages from the service record of the appellant were true copies. The Court's concern is with the propriety of these two actions.

As the case reaches this Court the appellant has a sentence of a bad-conduct discharge, confinement at hard labor for four months, forfeiture of $82.00 per month for four months, and a reduction to pay grade E–1. This results from a special court-martial's having found him guilty of two specifications of absence without leave.

A revision of the Manual for Courts-Martial, United States, 1969, that took effect on August 1, 1969,[1] includes a provision that permits the Secretary concerned to authorize consideration of personnel records during the sentencing part of a court-martial.[2]

---

[1] Executive Order 11476, 3 CFR, 1969 Compilation, page 132.

[2] Paragraph 75d:

"**Optional matter presented when court-martial constituted with military judge.** Under regulations of the Secretary concerned the trial counsel may, prior to sentencing, obtain and present to the military judge any personnel records of the accused or copies or summaries thereof. Summaries of such records will be prepared and authenticated by the custodian thereof as provided in appendix 8g. Personnel records of the accused include all those records made or maintained in accordance with departmental regulations which reflect the past conduct and performance of the accused. If the accused objects to the data as being inaccurrate or incomplete in a specified material particular, or as containing certain specified objectionable matter, the military judge shall determine the matter. Objections not asserted will be regarded as waived. The accused may submit in rebuttal any matter which reflects on his past conduct and performance. In cases where members determine sentence, the military judge may admit for their consideration any information from these records which reflects the past conduct and performance of the accused." Manual for Courts-Martial, United States, 1969 (Revised edition).

The military judge is empowered to determine objections that the data are inaccurate, incomplete, or objectionable on other grounds. The accused may submit material in rebuttal. Acting under this authority the Secretary of the Navy has authorized presentation to the military judge of personnel records of the accused that reflect past conduct and performance of the accused, but records of non-judicial punishment must relate to offenses committed during the current enlistment and during the two years next preceding the commission of any offense of which the accused stands convicted.[3]

The grant of permissive authority to present optional material from an accused's personnel records before sentencing by a court-martial having a military judge has an analogue in the presentence investigation under Rule 32 of the Federal Rules of Criminal Procedure. The information available to the sentencing agent in military practice is still more favorable to an accused than is the procedure followed in the United States district courts, where the presentencing report furnished the judge may include an extensive variety of information. Such information may cover criminal records, Federal Bureau of Investigation reports, local police reports, juvenile records, and military history, together with the nature of discharges, convictions by courts-martial, nonjudicial punishments, and personnel files. (The Presentence Investigation Report, Administrative Office of the United States Courts, Publication No. 103, 1965.) Use of such presentencing reports has been held not to violate due process (Williams v New York, 337 US 241, 93 L Ed 1337, 69 S Ct 1079 (1949)), even though there are no limitations on the contents of the reports (Gregg v United States, 394 US 489, 22 L Ed 2d 442, 89 S Ct 1134 (1969)), and the contents of the report need not be disclosed to the defendant (United States v Conway, 296 F Supp 1284 (DC DC) (1969)).

Although the use of records of Article 15 punishment seems completely consistent with the practice in United States district courts, our decision depends on whether the provision for the use of evidence of nonjudicial punishment before sentencing is a valid exercise by the President of a congressional grant of authority. Article 36, Uniform Code of Military Justice, 10 USC § 836, authorizes the President to prescribe procedure, including modes of proof, in cases before courts-martial. So far as the President considers practicable, this procedure and the modes of proof should apply the principles of the law and the rules of evidence generally recognized in the trial of criminal cases in the United States district courts. Rules prescribed under this authority have the force of law unless they conflict with other provisions of the Code or Manual or another recognized principle of military law. (United States v Villasenor, 6 USCMA 3, 19 CMR 129 (1955).)

The appellant's counsel vigorously asserts that a military judge's decision to admit proof of nonjudicial punishment conflicts with the congressional intent attending enactment of Article 15.

As originally enacted as a part of the Uniform Code, Article 15 provided authority for military commanders to impose nonjudicial punishment for minor infractions of discpiline. (Act of May 5, 1950, chapter 169, 64 Stat 107.) But the authority for nonjudicial punishment precedes the 1950 Code by many years.[4] Because of restrictions on the extent of the punishment authorized, the authority enacted in 1950 proved to be of limited usefulness as a substitute for trial by summary or special court-martial.[5]

---

[3] Section 0117, Manual of the Judge Advocate General, Department of the Navy.

[4] Senate Report No. 1911, August 23, 1962, to accompany HR 11257, 87th Congress, Second Session.

[5] *Ibid.*

The 1962 amendment to Article 15 increased the punishments authorized to approximately those that could be awarded by a summary court. (Act of September 7, 1962, Public Law 87–648, 76 Stat 447.) Except for those attached to or embarked in a vessel, members of the armed forces were given the statutory right to demand trial by court-martial instead of nonjudicial punishment under Article 15. (Section 815(a), Title 10, United States Code; Act of September 7, 1962, supra.) The Senate Report on the 1962 amendment declares:

". . . The bill, by providing increased authority for nonjudicial punishment, will enable commanders to deal promptly and efficiently with problems of discipline. At the same time, the increased nonjudicial authority should permit the services to reduce substantially the number of court-martials for minor offenses, which result in stigmatizing and impairing the efficiency and morale of the person concerned." [Senate Report No. 1911, August 23, 1962, 87th Congress, Second Session.]

Our attention is invited to statements in the hearings on the 1962 amendments (Hearings on H. R. 7656 before House Armed Services Committee, 87th Congress, First Session) that among the purposes the amendment to Article 15 was expected to accomplish were: (1) Avoidance of staining the record of a member of the armed forces with a criminal conviction, and (2) to "affect the matter of discharges under other than honorable conditions, which many times are based on the number of court-martials received."

An Article 15 punishment is not a conviction; it does not empower a court-martial to adjudge permissible additional punishments under Section B of the Table of Maximum Punishments. (Paragraph 127c, Manual for Courts-Martial, United States, 1969 (Revised edition).)

We perceive nothing in the legislative history of Article 15 that is inconsistent with use of records of the nonjudicial punishment by a court-martial when it is deliberating on an appropriate sentence. There is abundant evidence that Congress desired an alternative to the handicaps resulting from a record of conviction by court-martial. But nothing cited convinces us that Congress intended for the armed forces not to record nonjudicial punishment or to conceal a record of it if a person who had received such punishment later were tried by court-martial. Statements that such records should not be used as evidence of prior convictions reflect an awareness that nonjudicial punishment would not be considered a *conviction,* instead of that it would not be considered at all.

Counsel for the appellant contends further that Burgett v Texas, 389 US 109, 19 L Ed 2d 319, 88 S Ct 258 (1967), compels a holding that since the appellant did not have the right to lawyer-counsel during the Article 15 proceedings, the Constitution prohibits the record of such punishment from being used in the consideration of a sentence. This argument has at least two weaknesses. First, *Burgett* deals with a *conviction* obtained in violation of the right to counsel; for Article 15 proceedings, no court has held that there is a right to counsel. Second, *Burgett* involved a recidivist statute under which the limit of punishment was increased upon proof of a previous *conviction;* as we have pointed out earlier, nonjudicial punishment is not a conviction and it has no effect on the maximum sentence authorized for any court-martial offense. (Paragraph 127c, Section B, Manual, supra; United States v Green, 20 CMR 606 (AFBR 1955).)

Next we must consider the effective date of paragraph 75d of the Manual for Courts-Martial, United States, 1969 (Revised edition). Executive Order 11476, 3 CFR, 1969 Compilation, page 132, provided that with certain exceptions the Manual would apply to "all court-martial processes" after August 1, 1969. One of the exceptions was

467

that "the maximum punishment for an offense committed prior to August 1, 1969, shall not exceed the applicable limit in effect at the time of the commission of such offense." United States v Griffin, 19 USCMA 348, 41 CMR 348 (1970), which concerned the effective date of Manual changes broadening the standards for the admission of evidence of previous convictions against the accused in connection with the sentence, construed the words "applicable limit"[6] of punishment in that context as evidencing an intent that the changes not have the practical effect of operating to increase the limit of punishment from that to which the accused was subject at the time of the offense. The effect of using a record of Article 15 punishment is in this respect indistinguishable from the use of evidence of previous convictions.

In United States v Worley, 19 USCMA 444, 42 CMR 46 (1970), the Court pointed out that in legal contemplation a person committing an offense after January 1, 1969, did so with notice of the new provisions. Johnson was found guilty of two offenses, the first an absence without leave from October 21 to 23, 1968, and the second an absence without leave from October 26, 1968, to June 27, 1969. Absence without leave is not a continuing offense. (United States v Bruner, 11 USCMA 658, 29 CMR 474 (1960).) Consequently, both of the offenses occurred before the effective date of the 1969 Manuals. Under the holdings in United States v Griffin, supra, and United States v Worley, supra, the introduction of the record of Article 15 punishment was erroneous. The record of Article 15 punishment that was introduced was for disobeying a direct order, in violation of Article 91, Uniform Code of Military Justice, 10 USC § 891. Since there is nothing to reassure us that the severity of the sentence was unaffected by the error in this case, we must hold that it was prejudicial.

A second issue relates to the action of the military judge in certifying that Prosecution Exhibits 1 and 4 are true copies. At trial, counsel stipulated that Prosecution Exhibits 1 and 4 were true copies of authentic pages taken from the service record of the appellant. Both exhibits were certified to be true copies by the military judge. The appellant contends that this certification occurred before trial and that the military judge's action made him a witness for the prosecution in violation of paragraph 4e, Manual for Courts-Martial, United States, 1969 (Revised edition). This Court has held that a member of a court-martial who certified before trial a true copy of a previous conviction of the accused was a witness for the prosecution. (United States v Moore, 4 USCMA 675, 16 CMR 249 (1954).)

Paragraph 63 of the Manual includes as a witness "a person who by his certificate has attested or otherwise authenticated an official record introduced in evidence by the prosecution, or who has authenticated any writing so introduced, is a witness for the prosecution even if he does not testify in person." Article 26(d), Uniform Code of Military Justice, 10 USC § 826, provides: "No person is eligible to act as a military judge in a case if he is the accuser or *a witness* for the prosecution or has acted as investigating officer or a counsel in the same case." (Emphasis supplied.)

The Government asserts that the military judge certified the exhibits attached to the record after the trial as part of his duties in authenticating the record of trial. This assertion is supported by an affidavit of the military judge submitted separately by motion to this Court.

In its definition of a witness, paragraph 63 of the Manual refers to "a person who . . . *has* ▬▬ ■ *attested* . . . or who *has authenticated.*" (Emphasis supplied.) The emphasized verb-

---

[6] Other than dates, Executive Orders 11430 and 11476, prescribing the Manuals for Courts-Martial, United States, 1969, and 1969 (Revised edition), are identical.

forms apparently are intended to define as a witness only a person whose attestation or authentication occurred before trial. If in fact a military judge had certified the exhibits before trial there would have been no need for the stipulation that was entered into in open court during the trial. The military judge's post-trial attestation of copies of records was not error.

The decision of the Court of Military Review is reversed as to sentence. The record of trial is returned to the Judge Advocate General of the Navy. A rehearing on the sentence may be ordered.

Chief Judge QUINN concurs.

FERGUSON, Judge (concurring in the result):

I concur in the result only, as I believe a rehearing on the sentence is required, not because of the effective date of the new rules laid down in the Manual for Courts-Martial, United States, 1969 (Revised edition), but because the use, *per se*, of records of nonjudicial punishment is inconsistent with the intent of Congress in enacting and enlarging a commader's punitive jurisdiction under the Uniform Code of Military Justice, Article 15, 10 USC § 815. In short, I would hold the provisions of paragraph 75*d* of the Manual, insofar as they purport to permit use in aggravation of prior nonjudicial punishments, inconsistent with Code, supra, Article 15, and, hence, invalid. Inasmuch as my brothers reach an opposite conclusion, I disassociate myself from the views which they express.

Paragraph 75*d* of the Manual, supra, permits introduction during presentencing proceedings of "all those records made or maintained in accordance with departmental regulations which reflect the past conduct and performance of the accused." Acting under that authority, the Secretary of the Navy has authorized presentation to the court of records of prior nonjudicial punishments, relating to offenses committed during an accused's current enlistment and within the two years next preceding the commission of any offense of

which the accused was convicted at the present trial. Manual of the Judge Advocate General, Department of the Navy, section 0117. The issue presented is whether such use of records of nonjudicial punishment is consistent with Code, supra, Article 15.

The statute in question is entitled "*Nonjudicial* punishment" (emphasis supplied), and confers on commanding officers certain disciplinary powers over their subordinates without the intervention of a court-martial. Based on antecedent legislation and practices in the Army and Navy, it was originally passed as a part of the Uniform Code of Military Justice in 1950. In 1962, its amendment was sought to enlarge the punitive powers of commanders in order to eliminate resort to courts-martial for punishment of minor offenses and the consequent staining of a man's record with a prior conviction which would follow him throughout his career. This Court, the Department of Defense, and the Congress supported the suggested amendments on the basis that the enlarged punitive measures would permit a man to be disciplined without the measures taken against him forming a part of his permanent record.

In this connection, the following comments were made regarding the proposed legislation in Report No. 1612 of the House Armed Services Committee on HR 11257, 87th Congress, Second Session:

". . . This punishment is referred to as 'nonjudicial' punishment. *It is important to note that since this punishment is nonjudicial, it is not considered in any manner as a conviction of a crime, and in this sense it has no connection with the military court-martial system.* [Emphasis in original, pages 1–2.]

. . . . .

"Maj. Gen. Albert M. Kuhfeld, the Judge Advocate General of the Air Force, in his testimony before the committee, stated that he had discussed this matter with senior Air Force commanders throughout the world, and that almost without exception these commanders felt that

**469**

increased authority under article 15 would lead to a marked improvement upon discipline. They felt strongly that the commander who had responsibility for maintaining discipline should have authority to enforce it *in a manner that would not result in a permanent blot on the record of the individual punished.*" [Emphasis supplied, pages 3–4.]

And during the floor debates in the House, the following relevant comments are found:

"MR. LANE. . . . We are not concerned here with the serious violations of military discipline that make the court-martial procedure mandatory. They are relatively few compared with the hundreds of thousands of minor offenses where a serviceman could have been punished within the service *without blackening his character for the rest of his life.*

. . . . .

"MR. THORNBERRY. . . . It is important to note that since this punishment is nonjudicial, it is not considered in any manner as a conviction of a crime and in this sense it has no connection with the military court-martial system.

. . . . .

"MR. RIVERS. . . . We are talking about nonjudicial punishment that may be imposed by a commanding officer. An individual who is punished under article 15 is not presumed to have been convicted in any way, shape or manner, in a legal sense. *In other words, the record of punishment under article 15 may not be used as evidence of a prior conviction if an individual is later court-martialed.*

. . . . .

". . . Better discipline and also better ways to deter these boys and keep them headed away from this court of record which they cannot change.

. . . . .

"MR. OSMERS. . . . When a commanding officer punishes someone under article 15, this *does not*

become a permanent part of his military record and does not constitute a conviction. As a result it can not be used as evidence of a prior conviction in a future court martial. This is of great importance to the individual since conviction by a court martial may adversely affect his military and civilian career and may well affect the type of discharge that he receives upon completing his military service.

. . . . .

`"Enactment of this proposed legislation should be of great benefit to the man in service who gets into minor troubles because it will permit the commanding officer to award a suitable punishment without subjecting him to a court-martial *with a resulting black mark on his record.*

. . . . .

"MR. BENNETT. . . . The use of nonjudicial punishment has also proved to be a valuable procedure. From the standpoint of the military commander, it enables him to preserve and maintain discipline by dealing with minor infractions expeditiously. Most important, however, from the standpoint of the individual affected, is the fact that punishment imposed under article 15 does not leave the stigma of a criminal conviction on his record. *It should be emphasized that this nonjudicial punishment, as its name implies, is not considered in any manner as a conviction or as a criminal proceeding, but is strictly an administrative disciplinary measure.*" [Emphasis supplied.] [Congressional Record, May 15, 1962, pages 7794, 7783, 7786, 7788, 7789.]

The foregoing comments as to Congressional intent are further borne out by the testimony of Major General Kuhfeld at the Hearing before the Committee on Armed Services, United States Senate, 87th Congress, Second Session, on HR 11257, July 17, 1962, *passim.*

In like manner, the Senate Committee Report repeats the injunction that, "Since the punishment is nonjudicial, it is not considered as a con-

viction of a crime and in this sense has no connection with the military court-martial system." Senate Report No. 1911, 87th Congress, Second Session, page 2.

The same report notes that the limited authority of a commander to impose punishment under then-existing law caused him to refer charges to trial by courts-martial, which "stigmatizes a person with a criminal conviction on his record, which not only remains throughout his military career, but follows him into civilian life." Senate Report, supra, page 3. This stigma was to be substantially reduced or eliminated by increasing the power of the commander to administer nonjudicial punishment in lieu of trial for minor offenses. *Id.*, page 4. It especially pointed out that "The proposed amendments do not affect the present law that punishment under this article is nonjudicial and hence is not considered to be a conviction of a crime." *Id.*, page 8.

The Senate debates follow the same theme:

"MR. MANSFIELD. In effect, that is correct. But, as I understand the purpose of the bill, it would avoid the necessity of a court martial, and thereby would tend to keep the record of a man in the service more clear.

. . . . .

"MR. RUSSELL. . . . The bill is intended to permit smaller penalties to be imposed for offenses that cannot be overlooked, but would protect the record of the young man in the service." [Congressional Record, August 25, 1962, pages 16491, 16492.]

The foregoing makes crystal clear that Congress enacted the present Article 15, conferring wide disciplinary powers on commanders, with the understanding and intent that such punishments would not form a part of the man's records; would not follow him throughout his service career; and would not be treated in future courts-martial as previous convictions. In short, once administered as a cor-

rective measure, they would be recorded in the "company punishment book," as the Army used to call it, and not produced at some later court-martial as evidence of his prior bad behavior.

Yet, that is precisely what paragraph 75d of the Manual, supra, in conjunction with the Navy Regulation now before us, purports to do. As my brothers note, these directives permit the accused's prior nonjudicial punishments to be made a permanent part of his record and, if they meet other conditions laid down for admissibility, to be presented to the court in order to enhance his punishment. In light of the foregoing extracts from the statute's legislative history, I consider such action wholly opposed to the Congressional intent and, as such, inconsistent with the codal mandates. The Manual provision, so considered, therefore, must fall. United States v Villasenor, 6 USCMA 3, 19 CMR 129 (1955).

Turning to the rationale of the principal opinion, it attempts to distinguish the situation now presented by declaring that an Article 15 punishment is not a previous conviction which permits a court to adjudge one of the permissible additional punishments under the Table of Maximum Punishments, paragraph 127c, Manual, supra. Such begs the question.

Of course, an Article 15 punishment is not a prior conviction. That is precisely why Congress intended it not become a matter of record against the accused, but something which "can not be used as evidence of a prior conviction in a future court martial." House Debate, Congressional Record, May 15, 1962, supra, page 7788. As it is not a prior conviction, it should not be treated as one. Yet, that is exactly its effect when presented to the court-martial. Court members are going to treat it in fact as an instance in which an accused has committed a criminal offense, has been "tried" by his commander, and had punishment imposed on him. In short, use of these records operates to paint the accused

as a recidivist in the eyes of those charged with fixing his punishment, and it simply ignores reality to say that it will not substantially affect his sentence.

Moreover, it is not, as my brothers indicate, a question of whether Congress intended to allow the accused to conceal his prior record. Congress recognized nonjudicial punishment for what it is, namely, an administrative measure for the enforcement of discipline, in which there is no trial, no production of evidence, no representation by counsel, and nothing in fact which could characterize it as a judicial proceeding. It was willing to concede the necessity for this arbitrary tool, but it wanted to insure that the measure did not later serve to characterize the accused's service—"without blackening his character for the rest of his life." Congressional Record, supra, page 7794. In short, the Congress struck a balance between the needs of military discipline and the needs of an accused, by permitting use of nonjudicial procedures at an enhanced level of punishment on the condition that such would not form a part of his permanent military record.

In sum, then, I would hold the provisions of paragraph 75d, as applied to Article 15 punishment records, inconsistent with the provisions of Article 15 of the Code, and, as such, that they must fall. I regret that my brothers do not see fit so to construe the enactment and Manual in light of its Congressional background—the very basis on which this Court recommended the statute's enactment—but their action leaves me no alternative but respectfully to disassociate myself from the rationale of the principal opinion. Accused will do well to note that, in the future, there will be no substantial difference in the imposition on them of nonjudicial punishment and their trial by summary or special courts-martial. At least in the last-mentioned category, they will be entitled to representation by counsel and judgment by impartial and informed court members.

I join in ordering a rehearing on the sentence for the reasons stated herein.