UNITED STATES, Appellee

v

DALE A. COHAN, Private,

U. S. Army, Appellant

20 USCMA 469, 43 CMR 309

No. 23,459

April 9, 1971

*Captain Libero Marinelli, Jr.*, argued the cause for Appellant, Accused. With him on the brief were *Colonel George J. McCartin, Jr., Captain Bernard J. Casey*, and *Captain John D. Lanoue*.

*Captain John F. Cooney, Jr.*, argued the cause for Appellee, United States. With him on the brief were *Colonel David T. Bryant, Lieutenant Colonel Ronald M. Holdaway, Captain Alex B. Shipley, Jr.*, and *Captain Benjamin G. Porter*.

## Opinion of the Court

QUINN, Chief Judge:

The question presented by this appeal is the admissibility during sentence procedure of evidence of Article 15 punishment. Judges of the United States Army Court of Military Review have divided as to the answer. United States v Ward, 42 CMR 616 (ACMR June 3, 1970); United States v Palmer, 43 CMR — (ACMR October 28, 1970).

Paragraph 75*d*, Manual for Courts-Martial, United States, 1969 (Revised edition), authorizes a court-martial to consider personnel records of the accused reflecting his "past conduct and performance" in connection with the sentence. We have held that this grant of authority includes the record of nonjudicial punishment under Article 15, Uniform Code of Military Justice, 10 USC § 815. United States v Johnson, 19 USCMA 464, 42 CMR 66 (1970). Whether a record qualifies as one within the Manual provision is subject to regulations of the Secretary of the accused's service. Such regulations have been promulgated for the Army. AR 27–10, Legal Services, Military Justice, November 1968, as amended. Two paragraphs of these regulations are pertinent to the issue. Paragraph 2–20*b*(2) lists the records that qualify for consideration under

**470**

the Manual provision; included is the record of Article 15 punishment "required by regulations to be retained in the accused's field Military Personnel Records Jacket." Paragraph 3–15d defines the conditions for retention and disposition of record of Article 15 punishment. In material part, it reads as follows:

"*d. Retention and disposition of DA Forms 2627–1, 2627–2.*

"(1) *Military Personnel Records Jacket, U. S. Army (DA Form 201).* To be withdrawn and destroyed upon transfer of the individual from the organization, upon the complete setting aside of all punishments imposed, or upon the expiration of 2 years from imposition of the punishment, whichever shall first occur, provided that at the time of transfer, a period of 1 year has elapsed since imposition of the punishment and that all punishment imposed has been executed (with forfeitures collected and any period of detention of pay expired) and action has been completed on any appeal from such punishment. If these conditions do not exist at time of transfer, the copy of the record of proceedings will be retained in the individual's personnel records which accompany him to his new assignment and retained therein until the foregoing conditions no longer exist." [AR 27–10, paragraph 3–15d, at page 3–11.]

Paragraph 3–15d is plainly intended to limit the period during which Article 15 punishment can be considered against the individual upon whom it was imposed. It is, therefore, a regulation of repose; and, as far as language allows, should be construed liberally in favor of the accused. United States v Satz, 109 F Supp 94, 96 (ND NY) (1952).

Under the regulation, occurrence of any one of three events mandates destruction of the record of a particular punishment. One event is invalidation of all aspects of the punishment; a second is the expiration of two years from the date of imposition of punishment. No condition is attached to either of these events so that immediately upon occurrence the obligation arises to remove and destroy the record of punishment. See United States v Gallagher, 42 CMR 621 (ACMR June 4, 1970). Neither event is involved in this case. Punishment was imposed on September 16, 1968, and the trial was held in March 1970. There is no evidence to indicate, and it is not contended, that the punishment was invalidated after imposition. We turn, therefore, to the third event, which is transfer from the organization of which the individual was a member at the time of punishment.

Unlike the other two events requiring destruction of the record, transfer does not, at the instant thereof, vivify the duty to remove and destroy. Three factors must conjoin for transfer to operate as a mandate for withdrawal of the record from the individual's personnel file. First, one year must have elapsed since imposition of the punishment; secondly, all aspects of the punishment must have been executed; and, thirdly, if any appeal was taken, action thereon must have been completed. Under any reading of the regulation, if all three factors exist previous to transfer, the record must be removed from the file at transfer. Thus, if the accused had been transferred on September 17, 1969, instead of February 1969, the record of punishment could not have been retained in the personnel file forwarded to his new organization. United States v Fletcher, 42 CMR 698 (ACMR July 6, 1970); United States v Gallagher, supra.

The three factors mentioned above did not conjoin previous to the accused's transfer. Paragraph 3–15d of the regulation provides for such a situation. As the quoted excerpt indicates, it directs that the record of punishment remain in the personnel file accompanying the accused to his new organization and that it be "retained therein until the foregoing con-

ditions no longer exist." Different interpretations have been given to this provision.

Relying upon the opinion of Judge Nemrow in United States v Ward, supra, the accused contends that transfer to a new organization requires destruction of the record as soon as the three factors of time, complete execution of punishment, and finality of appeal combine, even if the combination occurs after transfer. According to that view, the record should have been withdrawn from the accused's file and destroyed in September 1969. A different construction was given in United States v Palmer, supra. It was there held that if at transfer one year had not elapsed since imposition of the punishment, it was a "nonexisting condition" which could never satisfy the provision that "the foregoing conditions no longer exist." Under this construction, the punishment record would remain in the personnel file until either of the other two events occurred, that is, two years elapsed or the punishment was totally invalidated. However, the court also construed the regulation as providing that the two factors of unexecuted punishment and incomplete action on appeal could "exist at the time of transfer" and therefore could be satisfied after the transfer. *Id.,* at page —. Going beyond *Palmer,* the Government argues that all three factors must exist at transfer or the record of punishment must remain in the file until either of the other events requiring removal occurs.

Originally, the record of disciplinary or nonjudicial punishment imposed upon an individual was not part of his personnel file. Thus, the Manual for Courts-Martial, U. S. Army, 1921, instructed the commander imposing the punishment to cause a record of the punishment to be made "in the company punishment book," but prohibited him from making "any entry thereof on the service record of the accused." *Id.,* at page 259. Later Manuals applicable to the Army changed the language of the provision, but the substance remained the same.[1] See Manual for Courts-Martial, U. S. Army, 1928, at page 106; Manual for Courts-Martial, U. S. Army, 1949, at page 147. The Manual for Courts-Martial, United States, 1951, paragraph 135*b*, at page 235, authorized the keeping of "such additional records" as might be provided by regulation. In practice, however, with certain exceptions, the transfer of an enlisted person from one organization to another gave the transferee a "clean slate" in the new unit because there was "simply no way by which personnel there . . . [could] determine from his records that he has been punished under Article 15." Everett, Military Justice in the Armed Forces of the United States, at page 131 (1956). Historically, therefore, transfer from an organization accorded the individual an opportunity to take his place in a new unit free from the burdens and the stigma incident to the punishment imposed upon him in his former organization. See Edwards and Decker, The Serviceman and the Law, at page 151 (1951). An intention to preserve this salutary concept, albeit in modified form, is manifest in that part of the regulation which reduces the two-year retention life of the record if the individual is transferred.

Indisputably, transfer is important to the question of retention or destruction of the record. It is especially important to persons new to the military who might be expected to experience difficulty in adjusting from civilian life to the rigors of recruit training, and whose transfer from a temporary unit to a permanent organ-

---

[1] Article 24, Articles for the Government of the Navy, provided for the entry of punishment in the ship's log, but no record of punishment accompanied enlisted personnel on transfer to another organization. Hearings before House Armed Services Committee on H. R. 2498, 81st Congress, 1st Session, at page 928.

ization commonly occurs in a period of less than a year. Such persons might hope to make a new start in their new organizations, but the Government's interpretation of the one-year provision disregards the transfer and subjects all such persons to the continued disadvantages of Article 15 punishment for a full two years. That result is not commanded by specific language in the regulation; and it is inconsistent with the manifest intention to preserve, in modified form, the historical effect of a transfer.

Paragraph 3–15d plainly limits the life span of the record of punishment of a person transferred to ▮▮▮▮▮▮▮ ▮ another organization. The Government, as did the court in the *Palmer* case, concedes that if one year has elapsed between imposition of punishment and the date of transfer, the record of punishment could not go forward to the new organization. The regulation commands that much in specific terms. It also commands that the record remain in the personnel file going to the new organization if at transfer one year had not elapsed, execution of punishment is not complete, and appellate action is still pending. In *Palmer*, the court recognized, correctly in our opinion, that the latter two circumstances could be obviated after transfer, but it concluded that no period of time after transfer could be added to the elapsed time before transfer to satisfy the one-year provision. In our opinion, the distinction is not justified by the language of the regulation or its practical effects.

We read the phrase "until the foregoing conditions no longer exist" as referring to all three factors involved in effectuating transfer as the basis for destruction of the record of punishment, that is, the lapse of one year, complete execution of punishment, and finality of appeal. If the one-year provision was not intended to be one of "the foregoing conditions," it would

have been an easy matter to say that it was not. Yet the regulation does not distinguish between time and the other factors. To refuse to give effect to time after transfer, as the Government urges, is virtually to strip the phrase of practical application.

Article 15 punishment is summary. The kinds of punishments authorized and the time allowed for appeal involve so little time that it is extremely unlikely that action on an appeal and execution of all penalties will not be fully completed within one year of the imposition of the punishment. See AR 27–10, paragraphs 3–8e(4), 3–18c, 3–21, 3–27, and 3–29. Even when punishment is suspended, the possibility of later revocation of an unexpired portion of the punishment is not likely to extend the time to more than a year. Only in an exceptional case, therefore, would a record of punishment, more than a year old, be incomplete as to execution or incomplete as to appellate action. On the other hand, it may commonly be expected that a record less than a year old may be subject to these conditions. In our opinion, the regulation was written for the common case, not the exceptional. The regulation manifests an intention to cut down the two-year life of the record of punishment. When transfer occurs, it is that fact that sets the stage for destruction. When the destruction may actually be accomplished is defined by the three specified conditions. None of these conditions is singled out as having special meaning or importance and all must combine to trigger the act of destruction. Whether the act of destruction is accomplished at transfer or after transfer depends upon whether all the conditions are satisfied; if they are met, the record must be destroyed because all "the foregoing conditions no longer exist." We conclude, therefore, that the record of Article 15 punishment imposed on September 16, 1968, should not have been admitted in evidence against the accused.[2]

---

[2] The evidence demonstrates, and the parties are agreed, that the accused was transferred to another "organization" within the meaning of AR 27–10. We need not, therefore, consider what units of command would

Left for consideration is whether the inadmissible evidence presents a fair risk that it contributed to the sentence to which the accused now is subject. United States v Lindsay, 19 USCMA 502, 42 CMR 104 (1970). The Article 15 punishment in issue was imposed for willful disobedience of an order by a platoon sergeant and resulted in reduction from private first class to private E-2, restriction and extra duty for fourteen days, and forfeiture of $15.00. The restriction and forfeiture were suspended. Evidence of three other Article 15 punishments was also admitted. One punishment was for wrongful issuance of a check; another was for presentment of a false claim to a finance officer; and the third was for dereliction of duty. In this case, the accused pleaded guilty to desertion and four specifications of issuing bad checks with intent to defraud, in violation of Articles 85 and 123a, Code, supra, 10 USC §§ 885 and 923a, respectively, which offenses made him liable to a sentence of dishonorable discharge, confinement at hard labor for four years, and forfeiture of all pay and allowances. The military judge imposed a sentence which included dishonorable discharge and confinement at hard labor for three years. On review, the convening authority reduced the period of confinement to eighteen months, as provided in a pretrial agreement with the accused.

Comparing the nature of the Article 15 punishment in issue with the fact that desertion entails a total rejection of military authority, and giving consideration to the relationship between the other offenses of which the accused was convicted and the acts for which the other Article 15 punishments were imposed, "we are confident that the improperly used evidence had an imperceptible effect upon the military judge's determination of a just and adequate sentence." United States

v Montgomery, 20 USCMA 35, 40, 42 CMR 227 (1970). See also United States v Flowers, 19 USCMA 473, 42 CMR 75 (1970).

The decision of the United States Army Court of Military Review is affirmed.

DARDEN, Judge (concurring in the result):

The sentences we are attempting to construe will not bear a literal interpretation; if at the time of transfer a lapse of one year since imposition of punishment is a "foregoing condition," ending the existence of such a condition is an impossibility.

The "clean slate" approach as a justification for removing and destroying a transferee's record of punishment one year after the punishment was imposed is for me not a satisfactory resolution of the issue. Once a member of the armed forces reports to a new unit with an Article 15 punishment in his record, his slate is not clean; his new superiors know of his earlier infraction, irrespective of whether the record is destroyed one year or two years later. Moreover, no obvious reason appears for treating that member differently from one who received Article 15 punishment on the same day but who remained in his old unit.

My views on this question are substantially in accord with the opinion in United States v Palmer, 43 CMR — (ACMR October 28, 1970), and the separate opinion in United States v Ward, 42 CMR 616 (ACMR June 3, 1970). Consequently I concur in the result of the principal opinion.

FERGUSON, Judge (concurring in part and dissenting in part):

I concur in part and dissent in part.

I agree that the record of Article 15 punishment imposed on this accused on September 16, 1968, should not have been admitted in evidence against him,

satisfy this requirement. Compare United States v Palmer, 43 CMR — (ACMR October 28, 1970), with United

States v Ward, 42 CMR 616 (ACMR June 3, 1970).

for the reasons set forth by the Chief Judge in his opinion. However, since the inadmissible Article 15 punishment was considered by all reviewing authorities to this level, in determining the appropriateness of the sentence, none of whom considered it as inadmissible, I believe this case should be returned to the Court of Military Review for reassessment of sentence. See my separate opinion in United States v Johnson, 19 USCMA 464, 469, 42 CMR 66 (1970). See also United States v Iacono, 19 USCMA 490, 42 CMR 92 (1970), and United States v Duron, 19 USCMA 563, 42 CMR 165 (1970).

I would reverse the decision of the Court of Military Review as to sentence and direct that a reassessment of the sentence be made by that court in light of the error noted above.