UNITED STATES, Appellee

v

ROY J. SHAMEL, Private, U. S. Marine Corps, Appellant

No. 26,455

June 22, 1973

*Captain D. A. Higley,* USMC, argued the cause for Appellant, Accused. With him on the brief were *Commander George W. Powell,* JAGC, USN, and *Lieutenant Thomas M. Geisler, Jr.,* JAGC, USNR.

*Lieutenant E. Alan Hechtkopf,* JAGC, USNR, argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel G. L. Bailey,* USMC, and *Captain Donald B. Myers,* USMCR.

## OPINION OF THE COURT

Quinn, Judge:

Evidence was received at accused's trial before a military judge, sitting as a special court-martial, of a previous conviction by summary court-martial at which the accused was, in part, sentenced to restriction and of nonjudicial punishment under Article 15, for which correctional custody was imposed. In his petition for grant of review, the accused challenged the admission of the evidence on the ground that at each of the previous proceedings he was unrepresented by lawyer-counsel. See Argersinger v Hamlin, 407 US 25 (1972).

In United States v Alderman, 22 USCMA 298, 46 CMR 298 (1973), we held that, under *Argersinger,* an accused is entitled to representation by counsel at a summary court-martial trial at which confinement is to be imposed. Appellate defense counsel contend that, whatever its label, the effects of correc-

tional custody are so indistinguishable from those of imprisonment as to require that counsel be appointed also for proceedings at which custody is imposed. In his opinion in *Alderman,* Chief Judge Darden commented on the point. He noted that it would be difficult for him to sustain a contention "that while counsel must be provided before summary courts-martial, they may be dispensed with in Article 15 proceedings that may result in correctional custody." *Id.* at 308 n. 1. The Chief Judge, however, did not elaborate on the point because he had concluded that, notwithstanding a sentence to confinement, an accused at a summary court-martial does not, under *Argersinger,* have a constitutional right to appointed counsel. His reasons for that conclusion are equally applicable to Article 15 correctional custody and require, in his judgment, rejection of the similar contention in this case as to correctional custody. In my opinion in *Alderman,* I deemed the constitutional concept of counsel explicated in *Arger-*

*singer* to be applicable to a summary court-martial at which confinement is adjudged, but unlike the Chief Judge I perceive substantial differences between confinement and correctional custody.

Before considering the differences it is appropriate to record my full agreement with appellate defense counsel that a "label-of-convenience" is irrelevant. See *In re* Gault, 387 US 1 (1967). I also agree that the constitutionality of the imposition of physical restraint by a commanding officer is not established solely by the fact that the practice apparently dates back to the Revolutionary War. See Miller, *A Long Look at Article 15,* 28 Mil.L.Rev. 37, 39 (1965). As Chief Justice Burger of the United States Supreme Court has pointed out, "[N]o one acquires a vested or protected right in violation of the Constitution by long use, even when that span of time covers our entire national existence." Walz v Tax Commission, 397 US 664, 678 (1970). What is important is the substance of the condition of confinement and the substance of the condition of correctional custody. "Substance, not form, determines the nature of the relief sought." United States v Gravitt, 5 USCMA 249, 256, 17 CMR 249, 256 (1954).

In *Alderman,* I observed that, while restriction, like confinement, operates to restrain freedom of movement, the practical and legal effects of that condition are substantially different from those of confinement. The differences convinced me that a sentence to restriction, unlike a sentence to confinement, was not within *Argersinger's* delineation of the right to representation by appointed counsel. As I assess correctional custody it resembles restriction so much more than confinement that it, too, does not, in my opinion, fall within *Argersinger's* prescription of the right to appointed counsel.

Appellate defense counsel point out that under the Navy's Corrections Manual a person in correctional custody is deemed to have a "status . . . similar to that of sentenced prisoners." Paragraph 109(4), SECNAVINST 1640.9 (June 1972). As an administrative interpretation of the nature of the punishment, the Manual provision is entitled to con-

siderable weight. But, if the statement means that correctional custody is tantamount to confinement, then the Army has construed the status differently. Army regulations note that correctional custody is not confinement and cannot be so regarded. AR 22–15, paragraph 8c(2)(c), November 20, 1963 as superseded by AR 27–15, April 12, 1965. One student of Article 15 punishment has assessed the intent of Congress in approving correctional custody as disciplinary punishment. He said:

> The hearings conducted on the amended Article show that Congress intended that a person undergoing correctional custody should not be placed in a facility where he would be associated with prisoners confined as a result of court-martial sentence or those awaiting trial by court-martial. In addition, those hearings indicate that (a) when serving this punishment a member should continue to perform his duties with his unit, (b) that he should not be treated as a prisoner but in an entirely different manner, and (c) that the physical restraint imposed is not to be considered "time lost." Army Regulations governing operation of correctional custody facilities provide, *inter alia,* that persons serving correctional custody will not be fingerprinted, will not wear prisoner brassards, and will not be employed, trained, or secured under armed guards.

Miller, *A Long Look at Article 15,* 28 Mil. L. Rev. 37, 70 (1965) (footnotes omitted).

From the standpoint of its purposes, its mode of application, and the general attitude of the community toward it, correctional custody is comparable to the practice of "detention" after school hours that was a common form of punishment in the public and parochial schools for infractions of school rules and promotion of school discipline. Detention is not now as in vogue as it was years ago, but, to my knowledge, it has never been seriously suggested that a student is entitled to be represented by a lawyer at the disciplinary hearing at which it is imposed. *Cf.* Madera v Board of Education, 386 F2d 778 (2d Cir 1967), *cert denied,* 390 US 1028 (1968). Appel-

late defense counsel refer to a different kind of disciplinary proceeding, which they assert recognizes the right to representation by counsel. That proceeding is the disciplinary hearing in a prison for violation of prison rules. While one instinctively balks at defining the scope of a constitutional right in the military in terms of applicability of the right in a restricted prison society, the point counsel seek to make is valid; certainly, if a constitutional right to counsel exists at a prison disciplinary hearing, the right should exist at a military disciplinary proceeding. Unfortunately for counsel, one of the principal cases cited by them expressly denies the existence of a constitutional right to appointed counsel. In Sands v Wainwright, 12 Crim. L. Rep. 2376, 2377 (USDC MD Fla 1973), the court said: "[T]his Court is not convinced that there is a right to the appointment of counsel in prison disciplinary proceedings." Perhaps the leading case which perceived a constitutional right to appointed counsel in a prison disciplinary proceeding is Clutchette v Procunier, 328 F Supp 767 (ND Cal 1971). However, the Court of Appeals for the Second Circuit specifically rejected *Clutchette's* rationale and concluded there was no right to counsel, although the punishment imposed at the hearing substantially increases the physical restraint of the individual. Sostre v McGinnis, 442 F2d 178, 194–199 (2d Cir 1971), *cert denied,* 404 US 1049 (1972).

In United States v Johnson, 19 USCMA 464, 467, 42 CMR 66, 69 (1970), this Court observed that "an Article 15 punishment is not a conviction" so that proceedings at which such punishment is imposed do not require the appointment of a lawyer to represent the respondent. The substantive nature of the Article 15 proceeding is not, in my opinion, affected by anything said in the several opinions in the *Argersinger* case. I conclude, therefore, that there is no constitutional infirmity in the Article 15 proceeding before us because the accused was unrepresented by appointed lawyer-counsel and the evidence of which the accused complains was properly admitted at his trial.

For the separate reasons noted, the decision of the Court of Military Review is affirmed.

DARDEN, Chief Judge (concurring):

I concur in the result for the reasons set forth in my separate opinion in United States v Alderman, 22 USCMA 298, 46 CMR 298 (1973).

DUNCAN, Judge (dissenting):

In United States v Alderman, 22 USCMA 298, 46 CMR 298 (1973), a majority of this Court held that a conviction by summary court-martial which resulted in a sentence to confinement was constitutionally invalid if the accused had been denied his constitutional right to counsel. See Argersinger v Hamlin, 407 US 25 (1972). In this case we are concerned with a sentence to correctional custody by a proceeding under Article 15, UCMJ, 10 USC § 815, during which the appellant was not represented by counsel.

The Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 131c(4), defines correctional custody as:

> [T]he *physical restraint* of a person during duty or nonduty hours, or both, imposed as a punishment under Article 15, and may include extra duties, fatigue duties, or hard labor. (Emphasis added.)

According to the Table of Maximum Punishments, paragraph 127c, Manual, supra, one who escapes from correctional custody may be sentenced to a dishonorable discharge and confinement at hard labor for 1 year. A breach of restraint imposed during correctional custody could result in the imposition of a bad-conduct discharge and confinement at hard labor for 6 months. Since these are the same penalties a serviceman would face in the event he acts in contravention of Article 95, UCMJ, 10 USC § 895, by escaping from confinement or breaking arrest, there is, in my opinion, no practical difference between correctional custody and confinement, at least insofar as the question of the need for representation by counsel at both proceedings is concerned.

Although an Article 15 proceeding is categorized as nonjudicial and does not

empower a court-martial to adjudge permissible *additional* punishments under Section B of the Table of Maximum Punishments as does a summary court-martial conviction, it may be introduced in evidence, as it was in this case, as a matter in aggravation for the purpose of determining an appropriate sentence. The effect of using a record of Article 15 punishment is in this respect indistinguishable from the use of evidence of previous convictions. United States v Johnson, 19 USCMA 464, 42 CMR 66 (1970).

In *Johnson,* a record of an Article 15 proceeding in which that accused had been *sentenced to restriction* for 21 days, was admitted in evidence as a matter in aggravation on sentence. My brothers held the admission of this evidence to be error because the misconduct therein considered occurred prior to the effective date of a revision to the Manual for Courts-Martial. See United States v Griffin, 19 USCMA 348, 41 CMR 348 (1970); United States v Worley, 19 USCMA 444, 42 CMR 46 (1970). In *Johnson,* reversing as to sentence and directing that a rehearing thereon may be ordered, my brothers held:

Since there is nothing to reassure us that *the severity of the sentence was unaffected by the error* in this case, we must hold that it was prejudicial. (Emphasis added.)

19 USCMA at 468, 42 CMR at 70. My brothers also acknowledged at 467, 42 CMR at 69:

The 1962 amendment to Article 15 increased the punishments authorized to approximately those that could be awarded by a summary court.

In substance, correctional custody imposed as Article 15 punishment and confinement at hard labor as the result of a summary court-martial conviction are essentially similar in that both permit physical restraint and hard labor. In each instance, the accused is deprived of his liberty.[1] Counsel have informed us that the Department of the Navy Corrections Manual, paragraph 109(4), provides that " '[t]he status of correctional custody *prisoners* is similar to that of sentenced *prisoners'* " (emphasis added by counsel). *And, as noted in United States v Johnson, supra, the collateral effect of Article 15 punishment may be the same as that of a conviction by court-martial. As Chief Judge Darden noted in his dissent in United States v Alderman, 22 USCMA at 308 n. 1, 46 CMR at 308:*

While it may be argued that counsel should be required for summary courts-martial since they constitute criminal convictions and not for Article 15 proceedings as they are nonjudicial and corrective in nature, the effect of confinement under the former and correctional custody under the latter is difficult to distinguish. See *In re Gault,* 387 US 1 (1967).

Since I am unable to distinguish them, I would hold that evidence of nonjudicial punishment resulting in correctional custody should not have been admitted in aggravation of appellant's sentence for the reasons set forth in my separate opinion in United States v Alderman, supra, and would return the record of trial to the Court of Military Review for reassessment of the sentence.

---

[1] Restriction, although it also results in a deprivation of liberty, does not, in my opinion, come within the purview of Argersinger v Hamlin, supra, since it "involves *moral* rather than physical restraint" (emphasis added). Paragraph 131c(2), Manual for Courts-Martial, United States, 1969 (Revised edition).