UNITED STATES, Appellee,

v.

Robert L. BROWN, Private, U.S. Army, Appellant.

No. 38,765.
SPCM 14017.

U. S. Court of Military Appeals.

July 20, 1981.

Appellant: *Colonel Edward S. Adamkewicz Jr., Lieutenant Colonel John F. Lymburner, Major Carlos A. Vallecillo, Captain John P. Young* (on petition).

Appellee: *Colonel R. R. Boller, Major Robert B. Williams, Major Ted B. Borek, Captain James A. Pritchett* (on petition).

## Opinion of the Court

EVERETT, Chief Judge:

The appellant was tried by special court-martial with members and, notwithstanding his pleas, was found guilty of two specifications of using a false writing to obtain a family separation allowance, in violation of Article 132, Uniform Code of Military Justice, 10 U.S.C. § 932. He was sentenced to a bad-conduct discharge, confinement at hard labor for 6 months, forfeiture of $279 pay per month for 6 months, and reduction to the lowest enlisted grade. After the findings and sentence were approved by all intermediate reviewing authorities, we granted review (9 M.J. 124 A.C.M.R.) of this single issue:

WHETHER THE MILITARY JUDGE ERRED BY ADMITTING PROSECUTION EXHIBITS 16, 17, AND 19 IN THAT THEY WERE NOT PROPERLY MAINTAINED IN APPELLANT'S MILITARY PERSONNEL RECORDS JACKET (MPRJ).

The three exhibits called into question by the assigned issue are records of nonjudicial punishment. Each of the first two was imposed for a dereliction of duty—one having occurred on December 5, 1974, and the other on January 31, 1975; the third was imposed for a 4-day absence without leave which had commenced on July 1, 1973. When they were offered into evidence by trial counsel during the presentencing proceedings, defense counsel objected on the ground that they had not properly been maintained in the appellant's Military Personnel Records Jacket and, accordingly, they were not admissible in his court-martial. The military judge overruled the objection in each instance; and the prosecutor relied upon the exhibits in his argument to the court concerning an appropriate sentence.

■ We conclude that the military judge erred in overruling the objections to these exhibits and that, under the circumstances of this case, appellant may have been prejudiced by this error.

## I

At a court-martial constituted with a military judge—as was the appellant's—the Manual for Courts-Martial authorizes the use, in connection with the sentence determination, of personnel records of a convicted accused that "reflect . . . [his] past conduct" and which are approved for this use by "regulations of the Secretary concerned." Para. 75d, Manual for Courts-Martial, United States, 1969 (Revised edition). Army Regulation 27–10, paragraph 2–20b (C.16, November 4, 1975), promulgated by the Secretary of the Army, enumerates the personnel records which qualify for such use at a court-martial. Among the qualified records are:

(4) Records of punishment under Article 15, UCMJ, *required by regulation to be maintained in the Military Personnel Records Jacket.* (Emphasis added).

Thus, it is critical to determine what records of Article 15 punishment are required by service regulations to be maintained in the Military Personnel Records Jacket (MPRJ).

The original of every official record of Article 15 punishment of an enlisted person must be maintained in the individual's Official Military Personnel File at US Army Enlisted Records Center, Fort Benjamin Harrison, Indiana, and a copy must be maintained in his MPRJ at his local unit of assignment. AR 27–10, paras. 3–15b(2)(a) and (d), and 3–15b(3)(a) and (d) (Interim Change, June 7, 1976). However, while the former is intended "for permanent filing," *id.* at para. 3–15b(2)(a), the latter may be either permanent or temporary, depending upon the length of time the individual has served on active duty at the time of the offense punished under Article 15. The record of a person with *more than 3 years* of service at the time of the act punished is retained in the MPRJ "for permanent filing." *Id.* at para. 3–15b(2)(d). However, the record of a person with *3 years or less* of active service at the time of the act punished must "be withdrawn from the [MPRJ] and destroyed" on the occurrence of any one of three specified events: sepa-

ration from the Army; the setting aside of the punishment involved; or expiration of 2 years "since imposition of the punishment." *Id.* at para. 3–15*b*(3)(d).

The personal data on the first page of the charge sheet—which, during the presentence procedure, defense counsel acknowledged to be correct—reveals that the appellant entered active duty on February 17, 1972. Thus, not until February 18, 1975, had the appellant completed more than 3 years of active duty service. Accordingly, all three of the records of Article 15 punishment at issue in this appeal—involving, as they did, acts committed within this initial 3–year period of active duty service— should have been withdrawn from the MPRJ and destroyed long before the appellant's instant court-martial. *See United States v. Cisneros*, 11 M.J. 48 (C.M.A. 1981).

## II

The Government concedes the error of admitting these three records of nonjudicial punishment, but it resists any suggestion that the appellant was prejudiced thereby. Of central importance to our consideration of prejudice is the fact that also admitted at trial was a bar to reenlistment certificate which contained, as support for the bar, reference to these same three Article 15 punishments.[1]

The purpose of the certificate is to deny "reenlistment to persons whose reentry into or continued service with the Army is deemed not to be in the best interests of the military service," AR 601–280, para. 1–27 (C.4, March 16, 1970), either because the individual is unsuitable for military service or because he is untrainable. *Id.* at para. 1–30. Paragraph 1–30*c* of the regulation indicates that, of the seventeen factors normally found, alone or in combination, in the records of individuals against whom a bar to reenlistment proceeding is initiated, one is "[r]ecurrent Article 15 punishments." *Id.* at para. 1–30*c*(7).

Preparation of the certificate is regulated by paragraph 1–31, AR 601–280, *supra.* Subparagraph *a*(2) specifically admonishes that "[a] bar to reenlistment procedure should not be based on generalities or approximate dates and/or vague places and times but should be specific and substantiated by official remarks made at the time of each occurrence." As to what material must be included on the certificate, subparagraph *b* prescribes:

The individual's unit commander will prepare a certificate signed in duplicate summarizing the basis for his intent to initiate bar to reenlistment procedures. This will include, if appropriate, the number and dates of courts-martial, incidents of punishment under Article 15, and all other factual and relevant information supporting his recommendation.

And subparagraph *d* requires that "[w]hen a certificate [for a bar to reenlistment] has been approved by the appropriate commander," a copy will be placed in the individual's MPRJ "where it will remain" permanently. Further it states, "[t]he remark, 'Not recommended for further service,' will be entered on the individual's Enlisted Qualification Record (DA Form 20)."

 A bar to reenlistment certificate is specifically listed in AR 27–10 as another of the personnel records of a convicted accused which may be admitted in the presentencing phase of a court-martial to reflect the accused's past conduct. AR 27–10, para. 2–20*b*(7) (C.16, November 4, 1975). Nonetheless, we conclude that the particular entry in box 10 of the appellant's certificate which reflected the three Article 15 punishments here of interest was not admissible. Initially, we observe that if the three records of punishment had been properly removed from the local unit's MPRJ as the regulation required, the local unit commander would not even have been aware of them; in such instance, or course, they would not then have been entered on the

---

1. Trial defense counsel objected to the admission of this certificate, contingent on the disposition of the objections to the records of Article 15 punishment.

certificate prepared by the local commander.[2]

 Furthermore, what the Government cannot successfully introduce into evidence through the front door it cannot successfully introduce through the back door via an administrative record-keeping regulation. *See United States v. Boles,* 11 M.J. 195 (C.M.A. 1981). The same paragraph which provides for entry of prior Article 15 punishments on the certificate also requires a similar entry for all prior court-martial convictions. AR 601–280, *supra,* para. 1–31 *b.* Yet, surely if one of these convictions was not yet final—and, accordingly, not directly admissible as a prior court-martial conviction (*see* para. 75*b*(2), Manual, *supra*)—it could not be admitted as an entry on the bar to reenlistment certificate. To permit otherwise would be to invite the distortion and manipulation of legitimate administrative record-keeping functions as a means to circumvent specific proscriptions on the admissibility of evidence in a court-martial.[3]

### III

In light of the number of inadmissible exhibits involved, their use by the Government in the argument on sentence, and the absence of any mitigating action on the sentence up to this point, we cannot conclude that, as in *Cisneros,* the error was not prejudicial. Accordingly, the decision of the United States Army Court of Military Review is reversed as to sentence. The record of trial is returned to the Judge Advocate General of the Army for submission to that court for reassessment of the sentence based on the approved findings of guilty or such other proceedings as may be consistent with this opinion.

Judge FLETCHER concurs.

COOK, Judge (dissenting):

I disagree with my Brothers' analysis of the impact of the perceived error and I would affirm the decision of the Court of Military Review.

Three prosecution exhibits, 14, 15 and 18, which reflect accused's "past conduct," were properly before the court members; each pertains to an Article 15 punishment. Additionally, during testimony on the merits, the accused acknowledged that, when he had "reported to Fort Dix," he "was 52 days AWOL" and had been "charged . . . with 32 days excess leave." Considering this evidence, I am satisfied that the risk of prejudice from the three inadmissible Article 15s was so minimal as to constitute harmless error under Article 59(a), Uniform Code of Military Justice, 10 U.S.C. § 859(a). Aside from that circumstance, I am convinced that the error in the admission of a separate copy of each of the other Article 15 punishments was rendered completely harmless by the appearance of the same information in the bar to reenlistment certificate that was admitted into evidence.

As the majority note, AR 27–10 lists the bar to reenlistment certificate as a personnel record qualified for use in courts-martial. Preparation of the certificate is regulated by AR 601–280 (May 1, 1968), with changes. Paragraph 1–30 (C4, March 16, 1970) prescribes the "Criteria" for identification of a person who may be found to be subject to bar. Among the telltale matters

---

2. Of course, if it appeared that in barring the reenlistment, the commander relied chiefly on Article 15's which in the proper performance of military duties should have been deleted from the accused's MPRJ, then it might be arguable that the reenlistment bar was itself invalid and inadmissible in evidence.

3. By this decision we do not restrict in any way the use in sentencing deliberations of information concerning a bar to reenlistment. In this case, for instance, the certificate could have been offered and admitted *sans* the objectionable entries concerning these three Article 15 punishments (*see* Mil.R.Evid. 201). Moreover, the existence of such a certificate was quite apparent from an examination of the appellant's Personnel Qualification Record (formerly the Enlisted Qualification Record) which, pursuant to paragraph 1–31*d* of AR 601–280, contained the entry, "Not recommend for further svc. Reviewed 781211." (Pros. ex. 13). Currently, under Mil.R.Evid. 201, the military judge, upon prosecution request, might well take judicial notice of the fact of the existence of the record in an accused's MPRJ.

"often" found in the record of a likely subject are "[r]ecurrent Article 15 punishments." *Id.* at para. 1–30*d*(7). The regulation expressly cautions that because a substandard individual had "been permitted to remain on active duty for a number of years," the then commander of the individual "should not [be] deter[red] . . . from taking action under . . . [the] regulation." *Id.* at para. 1–31*a*. It further directs that the certificate include appropriate "incidents of punishment under Article 15." An executed and approved certificate must be placed in the individual's Records Jacket as "a permanent part of the file," subject to periodic review, and a determination to void the certificate "by the same authority that approved the certificate originally" or the "comparable commander" of the "jurisdiction" to which "the individual has moved." *Id.* at paras. 1–31*a*(4)(b), *d* and *e*.

Section I, Box 10, of the certificate provides for a statement of the subject's record of nonjudicial punishment with indication of the offense, sentence and date. The listed punishments in the certificate admitted into evidence here as prosecution exhibit 20 include those represented, individually, by prosecution exhibits 16, 17 and 19.

Contrary to the majority's perception of the regulation, in my opinion AR 601–280 does not direct or intend that, in deciding on issuance of a bar to reenlistment certificate, a commander must limit his inquiry into the subject's record of Article 15 punishments to those that may be retained in his Records Jacket. The objective of the record withdrawal provision of AR 27–10 is entirely different from that of the bar to reenlistment certificate required by AR 601–280. The removal provision is designed to relieve the individual of the future consequence of past administrative measures taken against him during the first years of his adjustment to military life.* The bar to reenlistment procedure contemplates a searching review and evaluation of all past conduct of the individual to foreclose a particular future action by him, specifically, reentry into the service. In view of the objective of a certificate and the fact that AR 27–10 requires that every "original" record of an Article 15 punishment be permanently maintained as part of the individual's Official Military Personnel File, I conclude that the certificate correctly included all previous Article 15 punishments which the accused had suffered, irrespective of whether a particular record had been removed, or was subject to removal, from the subject's Records Jacket. I, therefore, disagree with the majority's characterization of the commander's consideration of accused's past conduct that is known to be included in accused's permanent record as a "back door" impropriety. I conclude that the presence of that evidence of past conduct in the certificate dispelled any adverse effect that the individual exhibits might otherwise have had.

---

* *See United States v. Cohan*, 20 U.S.C.M.A. 469, 472–73, 43 C.M.R. 309, 312–13 (1971).