UNITED STATES, Appellee

v

CHARLES M. SANTO, Private First Class,
U. S. Marine Corps, Appellant

20 USCMA 294, 43 CMR 134

No. 23,025

January 29, 1971

Lieutenant George F. McGunnigle, Jr., JAGC, USNR, argued the cause for Appellant, Accused. With him on the brief were Captain William McCarrol Mark, JAGC, USNR (Ret), Commander E. M. Fulton, Jr., JAGC, USN, and Lieutenant James S. Bailey, Jr., USNR.

Captain John J. Reilly, USMCR, argued the cause for Appellee, United States. With him on the brief were Lieutenant Colonel Charles J. Keever, USMC, and Commander Michael F. Fasanaro, Jr., JAGC, USN.

## Opinion of the Court

FERGUSON, Judge:

Tried by general court-martial, the accused pleaded guilty to absence without leave, in violation of Article 86, Uniform Code of Military Justice, 10 USC § 886, and not guilty to separate counts of wrongful possession of marihuana and heroin, in violation of Article 134, Code, supra, 10 USC § 934. He was convicted as charged and sentenced to dishonorable discharge, total forfeitures, confinement at hard labor for five years, and reduction. The convening authority reduced the term of

confinement to four years, but otherwise approved the sentence. The Court of Military Review affirmed, and accused's petition for review was granted on issues pertaining to the consideration of evidence regarding the drug charges, as obtained by search and seizure. We consider only the question of the legality of that search and reverse.

According to the Government's witnesses, accused was absent without leave. His commanding officer, Colonel Hunt, called in Agent Burnett of the Criminal Investigations Detachment, informed him of the accused's absentee status; that he suspected he was staying in an apartment in the post housing area; that he was awaiting administrative discharge for narcotics use; and that he was more than likely presently involved in some sort of narcotics violation. When Burnett pointed out that apprehension of an unauthorized absentee was not a function of the Criminal Investigations Detachment, Colonel Hunt insisted that he nevertheless undertake the matter.

Armed with photographs of the accused and of his automobile, information that he had been seen in a particular section of the housing area with a girl, and additional allegations from a confidential informant regarding accused's connection with narcotics, Burnett, accompanied by two other agents, went to the location in question and found accused's car. By going from door to door, they found the accused was staying in a particular apartment with a young female and was probably at home.

The agents gained admittance to accused's abode by knocking on the door and falsely claiming Burnett had run into accused's vehicle. On the pretense of exchanging names for insurance purposes, Burnett obtained accused's ID card and confirmed his identity. He declared that such was required because the photographs furnished him were too fuzzy to permit certain identification. Accused was immediately placed under apprehension for unauthorized absence. Accused had previously confirmed that his girl was with him in the apartment.

Hearing a noise in an adjoining room, Burnett opened the door because "[f]or all that I knew, it could be another man in there. It could have possibly been someone with a gun." Accused's volunteered information that the agents' intrusion had interrupted a tete a tete with his female companion "didn't really sink in." According to Burnett, he observed a nude girl lying on the bed with a white paper bag in the middle of the floor. The bag was open, and its contents appeared to be marihuana.

Thereafter, over accused's objections, the agents thoroughly searched the apartment, finding additional marihuana and, attached to the bottom of a bottle of aftershave lotion in another bedroom, a small package of heroin.

After hearing the foregoing evidence for the Government, as well as contravening proof that the initial marihuana was found, not in the middle of the bedroom floor but in a closet, the law officer overruled the defense objections to the admissibility of the heroin and marihuana, declaring that, if he was in error, the matter could be "cured very quickly by the reviewing authorities." We, indeed, believe he erred and that the search producing the evidence was illegal.

One cannot read the testimony of the Government's witnesses herein presented without gaining the abiding impression that the entire proceedings were designed to apprehend the accused in the apartment ostensibly for unauthorized absence and thereby to gain a pretext for making an otherwise unauthorized search for narcotics. Thus, Agent Burnett conceded that apprehension of absentees was normally outside the purview of the Criminal Investigations Detachment. Yet, here, not one, but three agents were so employed in a case allegedly involving only a nine-day absence. Secondly, from its inception, the case was shot through with allegations and information regarding accused's connection with narcotics. Colonel Hunt initially broached the subject with the thought that the accused would probably be

found to be so involved. The agents obviously pursued that line of thought by their reliance on similar information from their confidential informant. And, while according to them, they were interested only in apprehending an absentee, they pursued an elaborate stratagem to insure being invited into the apartment after accused answered the door, when they needed only to ask for his identification card to quell any doubts about his identity which may have lingered after viewing photographs which identified him and his car and after being informed by his neighbor that he was staying next door with a girl. Finally, it is simply amazing that the fact both the neighbor and accused had told them the girl was present did not "sink in" and that Burnett, having just apprehended a nine-day absentee, had his fears so aroused by an unidentified noise in the bedroom that he felt it necessary to make the investigation which he did and which, incidentally, produced the evidence of the very violations he had been warned to suspect.

Police officers cannot nullify the protection against unreasonable searches "by the simple expedient of placing the defendant under arrest." Henderson v United States, 12 F2d 528 (CA 4th Cir) (1926). An underlying arrest for a minor offense cannot be used as a sham or cover for a search for evidence of an unrelated crime, for which no probable cause to apprehend exists. Amador-Gonzalez v United States, 391 F2d 308 (CA 5th Cir) (1968); Taglavore v United States, 291 F2d 262 (CA 9th Cir) (1961). And when the arrest is deliberately delayed in order to permit the individual sought to enter premises the officer desires to examine, courts rightly find an improper motive involved. McKnight v United States, 183 F2d 977 (CA DC Cir) (1950). So also must we look with suspicion upon cases where, as here, arrests are made by agents for offenses normally outside their jurisdiction. United States v James, 378 F2d 88 (CA 6th Cir) (1967).

Here, the evidence bespeaks the agents' real purpose was to apprehend the accused within the apartment for absence without leave in order that it might be searched for proof of the unrelated narcotics violations to which their attention had been repeatedly and forcibly drawn. Indeed, the Court of Military Review itself found they "perpetrated a fraud upon the accused in order to gain admission to the house."

Amador-Gonzalez v United States and Taglavore v United States, both supra, involved similar schemes to arrest defendants for minor offenses and to use their apprehensions as a basis for narcotics searches. In the former, defendant, suspected of a narcotics offense, was arrested for a traffic violation and his vehicle searched for drugs. In the latter, accused was similarly arrested on a warrant for a traffic offense by inspectors who were told, as here, that an excellent chance existed he would have drugs in his possession. Such subterfuges, the court held, "cannot be justified." Taglavore v United States, supra, at page 266. It likewise cannot be justified here.

In sum, we hold that, under the circumstances here presented, the Government failed to carry its burden of proving by a preponderance of the evidence that this search, purportedly incident to an arrest for absence without leave, was lawfully executed. The law officer, therefore, erred in ruling to the contrary, and the issue is resolved in favor of the accused.

The findings of guilty of Charge II and its specifications are set aside, and the counts are ordered dismissed. The decision of the Court of Military Review is reversed, and the record of trial is returned to the Judge Advocate General of the Navy. The court may reassess the sentence on the basis of Charge I and its specification or order a rehearing thereon.

Chief Judge QUINN and Judge DARDEN concur.