**UNITED STATES, Appellee,**

v.

**Brian L. KING, Private, U. S. Army, Appellant.**

**No. 30,574.**

U. S. Court of Military Appeals.

April 30, 1976.

*Lieutenant Colonel James Kucera* and *Captain Sammy S. Knight* argued the cause for Appellant, Accused. With them on the briefs were *Colonel Alton H. Harvey* and *Captain Michael P. LaHaye.*

*Captain Russell S. Estey* and *Captain Gary F. Thorne* argued the cause for Appellee, United States. With them on the briefs were *Lieutenant Colonel Donald W. Hansen, Major Steven M. Werner,* and *Captain John R. Erck.*

## OPINION OF THE COURT

COOK, Judge:

The accused challenges his conviction for possession of a prohibited drug, Mandrax, in violation of a general regulation promulgated by Headquarters, United States Army, Europe and Seventh Army, on the ground that evidence of his possession of the substance was obtained in an illegal search.

As a result of an enlargement by the battalion commander of the discretion allowed company commanders to conduct "health and welfare inspections," Captain Millson, commander of the accused's company, instituted a new system of company-wide inspections. However, as these turned out to be a "gross waste of time," he refined the system to provide for irregular, random selection of one or two rooms, as he determined. The "very first time" the revised system was used the accused's room was selected for inspection.

The parties agree in this Court, as they did at trial, that a commander has authority to conduct inspections of persons and property to determine the fitness and security of the command. Such inspections can be initiated without regard to probable cause of the kind required to justify a search for evidence of a crime and without the consent of the persons of the command subject to the inspection. However, the parties disagree as to the nature of the examination directed by the company commander to be held in regard to the accused.

The accused contends that, while the commander testified he had ordered a health and welfare inspection, the factual predicate for his order, its objectives, and the manner of its execution irresistibly lead to the conclusion that what was done was part of a "scheme to conduct searches without probable cause under the guise of a health and welfare inspection." *See United States v. Santo,* 20 U.S.C.M.A. 294, 43 C.M.R. 134 (1971); *United States v. Lange,* 15 U.S.C.M.A. 486, 35 C.M.R. 458 (1965). Oppositely, Government counsel maintain, primarily, that the evidence compellingly proves that, in intention and operation, the examination was a legitimate health and welfare inspection; and, secondarily, that as the issue was decided against the accused as a factual matter by both the trial judge and the Court of Military Review, and as there is ample evidence to support their findings, this Court should not reexamine and overturn their decisions. *United States v. Anderson,* 1 M.J. 246 (1976); *United States v. Remele,* 13 U.S.C.M.A. 617, 33 C.M.R. 149 (1963). The view we take of the evidence makes it unnecessary to choose between the competing arguments.

The company commander testified that the purpose of the inspection was "to establish a decent living condition in the barracks." Inspectors were expected to look for "unhealthful conditions, failure to maintain the billets"; if unauthorized or contraband articles were found they were "grab[bed] up right away." One of the officers, who was part of a four-man team that went to the accused's room to conduct the examination, testified he was "supposed to go in . . . [and] inspect the general condition of the room," looking also for excess equipment and contraband. The commander, the lieutenant, and an enlisted member of the inspection team, all emphasized in their testimony that the inspection was of the accused's room. Thus, the commander testified he had established a schedule of *rooms* for inspection, and when he decided on an inspection of the accused's room, he instructed the inspectors "to inspect this room, do it quickly and thoroughly, a health and welfare inspection." A noncommissioned officer member of the team similarly testified that he was told to accompany the platoon leader to the accused's *room* to "look for stuff that belongs to the motor pool like tools and extra TA–50 equipment."

None of the testimony as to the inspection procedure indicates that the person and clothing of an occupant of the room was also to be subjected to examination. Yet, when the accused entered the room, his "body" and wallet were examined. The first evidence of the proscribed drug was found in a pocket of the field jacket he had been wearing.

 Authority to inspect premises does not itself justify inspection of a person and the clothing he is wearing. *See United States v. Fleener*, 21 U.S.C.M.A. 174, 180, 44 C.M.R. 228, 234 (1972); *United States v. DiRe*, 332 U.S. 581, 587, 68 S.Ct. 222, 92 L.Ed. 210 (1948). Assuming that the inspection of the room was lawful, the Government failed to meet its burden of proving that the inspectors had authority to inspect the body and clothing of the accused. The intrusion into the pocket of his field jacket was, therefore, illegal, and the evidence obtained as a result thereof should not have been admitted in evidence against him.

 Other vials containing the proscribed substance were later found "behind" a drawer in the wall locker assigned to the accused. The fact that the accused's person was improperly searched during the course of a legal inspection of his room would not transform the inspection into an unlawful proceeding. *See United States v. Grace*, 19 U.S.C.M.A. 409, 411, 42 C.M.R. 11, 13 (1970). Consequently, the discovery of the other vials in a place controlled by the accused would not necessarily taint them as evidence obtained through exploitation of an illegal search of the accused's person, and thereby subject them to the exclusionary rule. The question that remains, therefore, is whether part of the findings of guilty can be upheld.

 Responding to an argument by defense counsel that there was insufficient evidence to indicate the accused had "placed" the drug behind the drawer or had knowledge that it was there, trial counsel contended that the bottles found on the accused and those behind the drawer were of "the same type," and he urged the judge to consider "the similarity of all of the exhibits." It reasonably appears, therefore, that the presence of the same drugs in the same type of containers on the person of the accused may have influenced the trial judge in his determination that the accused knew about, and had control over, the drugs in the containers found behind the drawer so as to charge him with possession of them.

Thus, none of the findings of guilty are free from the effects of the search of the accused.

The decision of the United States Army Court of Military Review is reversed, and the findings of guilty and the sentence are set aside. The circumstances of the record, from which, among other things, it appears that the normal term of the accused's enlistment has ended, convince us that it is appropriate to terminate the proceedings. Accordingly, we order the charges dismissed.

Senior Judge FERGUSON concurs.

FLETCHER, Chief Judge (concurring in the result):

I concur in the result. See my separate opinion in *United States v. Thomas*, 1 M.J. 397 (1976).