UNITED STATES, Appellee,

v.

James D. BOLES, Airman, U. S. Air
Force, Appellant.

No. 38,418.
ACM S24825.

U. S. Court of Military Appeals.

June 15, 1981.

For Appellant: *Major Robert G. Gibson,
Jr.* (argued) and *Colonel Larry G. Stephens*
(on brief).

For Appellee: *Major Robert T. Mounts* (argued) and *Colonel James P. Porter* (on brief).

### Opinion of the Court

FLETCHER, Judge:

Consistent with his pleas, the appellant was found guilty of larceny of motorcycle parts of some value, in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921. On August 21, 1979, the members of his special court-martial sentenced him to a bad-conduct discharge, confinement at hard labor for 6 months, forfeiture of $279.00 pay per month for 6 months and reduction to E–1.[1] The convening and supervisory authorities approved this sentence. The United States Air Force Court of Military Review reduced the approved sentence of confinement and forfeitures by a period of 2 months due to the improper admission of evidence of the appellant's prior service use of drugs, but otherwise affirmed the findings and sentence.

The issue granted for review (9 M.J. 4 (1980)) by this Court is:

WHETHER THE LETTER OF REPRIMAND GIVEN TO THE APPELLANT FOR AN ALLEGED OFF–BASE, OFF–DUTY FIRE–BOMBING WAS ADMISSIBLE TO AGGRAVATE THE SENTENCE SINCE THE APPELLANT WAS STILL PENDING TRIAL FOR THE OFFENSE IN CIVILIAN COURTS.

This letter of reprimand was administrative rather than punitive in nature because it was not a product of a court-martial or Article 15, UCMJ, 10 U.S.C. § 815, proceeding. Para. 128*c*, Manual for Courts-Martial, United States, 1969 (Revised edition). *See* paras. 126*f* and 131*c*, Manual, *supra*. It was issued to the appellant by his immediate commanding officer on August 15, 1979. The latter ordered it included in the appellant's Unfavorable Information File (UIF) on August 16, 1979, five days before his court-martial for the larceny offense. *See generally* Unfavorable Information Files (UIFs), Control Rosters, Administrative Reprimands and Admonitions, AFR 35–32 (September 22, 1975, *as amended by* Change 2, July 10, 1978).[2] It was actually placed in his file on August 17, 1979. The letter states:

1. Preliminary investigation has disclosed that you did, at Clovis, N.M., on or about 5 Aug. 79, willfully and maliciously throw a molotov cocktail that set fire to the house door and automobile, the property of Tony Garcia.

2. You are hereby reprimanded. By your conduct you adversely reflected upon yourself as a member of the United States Air Force. Further, incidents of this nature will not be tolerated and it is expected that your future conduct will set and [sic] example for your fellow associates.

The letter of reprimand was also accompanied by a report of the civilian police investigation of this offense. *See* para. 5a. It included *inter alia* a report of the appellant's arrest and his purported confession.

Defense counsel objected to the introduction at trial of these matters as evidence to be considered by the members in arriving at an appropriate sentence for the appellant's larceny offense. He argued that such evidence was inflammatory and hurriedly prepared for court-martial rather than for the legitimate administrative purposes intended in the service regulations. Trial counsel responded that such matters were included in the appellant's UIF in accordance with service regulations for the purpose of aggravating the appellant's case. The military judge reviewed the applicable service regulations and overruled the objection without comment. The exhibit was admitted by the military judge. Later, trial counsel examined defense witnesses with respect to this alleged civilian offense and

---

1. The maximum sentence for this offense at a special court-martial was awarded, except a small amount of authorized forfeitures. *See* para. 15*b*, Manual for Courts-Martial, United States, 1969 (Revised edition).

2. All references in this opinion to paragraphs are to the July 1978 (change 2) version of AFR 35–32, unless otherwise indicated.

made repeated direct references to it in his closing argument on sentence.

The first question we must address is whether prosecution.exhibit 4, which contained the above materials, was properly admitted by the military judge during the sentencing portion of appellant's court-martial. Article 36, UCMJ, 10 U.S.C. § 836; *see generally* para. 75, Manual, *supra.* If this evidence was inadmissible at the court-martial, we must then determine whether the appellant was prejudiced as a result of its erroneous admission by the military judge. Article 59(a), UCMJ, 10 U.S.C. § 859(a); *United States v. Montgomery*, 20 U.S.C.M.A. 35, 42 C.M.R. 227 (1970).

I

Government counsel argues that evidence of alleged criminal misconduct by the appellant in the civilian community was admissible during the sentencing portion of his court-martial under paragraph 75*d*, Manual, *supra. See generally United States v. Mack*, 9 M.J. 300, 315–19 (C.M.A. 1980). He first asserts that such information was properly maintained in appellant's UIF in accordance with departmental regulations. *See generally* AFR 35–32. Secondly, he notes that because a UIF is a record maintained at the Consolidated Base Personnel Office (CBPO) (para. 3) as a personnel record of the appellant's past conduct, it automatically qualifies for admission at the court-martial under the above Manual provision. Para. 5–13, AFM 111–1 (5 March 1979). We find such an argument to be unpersuasive in the present case.

A similar question involving civilian criminal misconduct was addressed in *United States v. Cook*, 10 M.J. 138 (C.M.A.1981). There, this Court held that a record of a

Florida procedure of withholding adjudication after a plea of guilty was a record of "civil court convictions, or judgments equating to convictions" within the meaning of paragraph 5b(2), AFR 35–32.[3] We held that it was properly included in the appellant's UIF in accordance with this provision of the regulation and was admissible as evidence at Cook's court-martial as a personnel record of past conduct under paragraph 75*d*, Manual, *supra.*

In the present case, information concerning the appellant's alleged involvement in a civilian criminal offense was included in the appellant's UIF by means of an administrative letter of reprimand and accompanying documentation. Unlike the situation in *United States v. Cook, supra*, no serious argument can be made that this administrative action falls within the ambit of paragraph 5b(2). Moreover, the Government would also be sorely pressed to argue that the civilian police report with its record of arrest and purported confession is a "civil court convictio[n] or judgmen[t] equating to [a] convictio[n]," since appellant had not yet been tried in the civilian community. Accordingly, this information could not properly be included in the appellant's UIF on the basis of the particular regulatory provision utilized in *United States v. Cook, supra*, nor could it be admitted at the court-martial in this evidentiary posture.

Nevertheless, the Government asserts that an administrative reprimand and its accompanying documentation themselves are properly included in the appellant's UIF under a different provision of this same regulation. *See* para. 5a(7).[4] Therefore, it argues that all the above information concerning allegations of civilian criminal misconduct could be maintained as a personnel record in accordance with this regulatory

---

**3.** Para. 5b(2), AFR 35–32 (C1) (31 Mar. 1977): "In all cases, UIFs contain the following information as applicable: ... (2) Civil court convictions, or judgments equating to convictions for other than minor civil law infractions."

**4.** Para. 5, Contents of UIFs, AFR 35–32 (C2) (July 1978), states:
  a. UIFs may include, but are not limited to, the Air Force Form 1137, and correspon-

dence or documentation as determined appropriate for file by the member's immediate commander or higher authority, that substantiates or records:

  .     .     .     .

  (7) A copy of an administrative letter of reprimand or admonition not pursuant to Article 15, UCMJ or court-martial.

provision and thus, it was properly admitted at court-martial under paragraph 75*d*, Manual, *supra. Cf. United States v. Newbill*, 4 M.J. 541 (A.F.C.M.R.1977). Such an argument presumes too much in the present case. We hold, *for purposes of paragraph 75d, Manual, supra*, that this commanding officer's reprimand of the appellant for alleged civilian misconduct did not comport with regulations which define the administrative reprimand properly included in a UIF under paragraph 5a(7). Accordingly, it should not have been admitted at the court-martial under paragraph 75*d*, Manual, *supra*.

Section C, AFR 35–32, contains the regulations which "facilitate a clearer understanding of the nature and use of the administrative reprimands and admonitions." Para. 19. While the stated intention of these regulations is not to constrain the discretionary authority or flexibility of the commanding officer, we do not believe they can simply be ignored by this Court and others in determining whether such a record of an administrative reprimand was properly admitted at the court-martial. *See United States v. Cohan*, 20 U.S.C.M.A. 469, 43 C.M.R. 309 (1971). Otherwise, the President's concern for fairness and some limitation in the sentence procedure as reflected in paragraph 75*d*, Manual, *supra*, could be avoided by selective reliance on regulatory terms taken out of context which are overly broad or beyond the expertise or knowledge of this Court.[5]

■ An administrative reprimand as defined by this regulation is a "management too[l] available to commanders . . . to reprove and instruct subordinates for departing from acceptable norms of perform-

ance, conduct or bearing." It is "corrective rather than punitive in nature" and carries with it "a strong implication of official censure." Para. 20. It is "not [to] be confused with punitive reprimands . . . administered as a consequence of either court-martial conviction, or acceptance of nonjudicial (Article 15, UCMJ) punishment." Para. 21. Instead, it is intended to be judiciously used as "an effective management device to assist in maintaining Air Force standards and accomplishing the Air Force mission." Para. 22. The decision to place an administrative reprimand in a member's UIF rests with his commanding officer. Para. 23.

The record of trial does not state the particular purpose for which this commanding officer issued the reprimand of August 15, 1979, to the appellant. It does contain the frank admission of trial counsel that this reprimand was placed in the appellant's UIF "to aggravate the case" against him. We observe that the commander notified the appellant of this intended action on the same day he issued the administrative reprimand to the appellant. In addition, the administrative reprimand was issued a mere five days after the alleged incident occurred and well before the matter was finally resolved by civilian authorities. *See* para. 5b(2). Moreover, both these administrative actions were taken less than a week before the appellant's court-martial for the larceny offense. Finally, an administrative reprimand for arson by firebombing hardly seems a judicious or effective use of this management tool. In view of the above and in the absence of contravening evidence from the Government, we conclude the defense has shown that this reprimand was issued by the commanding officer and

5. Paragraph 75*d*, Manual, *supra*, was promulgated by the President in an effort to bring military sentencing procedure in line with the practice in federal civilian courts. *See United States v. Johnson*, 19 U.S.C.M.A. 464, 42 C.M.R. 66 (1970). *Cf. Analysis of Contents*, Manual for Courts-Martial, United States, 1969, Revised edition, para. 75*d*. However, his rules of sentencing procedure at courts-martial are still not as broad as those in operation in federal district courts. This may have something to do with the fact that members may sentence at court-martial while a judge sentences in federal district court. Fed.R.Crim.P. 32; *United States v. Mack*, 9 M.J. 300, 319 (C.M.A.1980). In any event, sentencing in the federal civilian courts is based on statutes not yet found applicable to courts-martial. *Compare Smith v. United States*, 551 F.2d 1193 (10th Cir. 1977), *cert. denied*, 434 U.S. 830, 98 S.Ct. 113, 54 L.Ed.2d 90 (1977), *with* Article 36(a), Uniform Code of Military Justice, 10 U.S.C. § 836(a), and para. 75, Manual, *supra*.

placed in his UIF for the purpose of influencing the appellant's present court-martial. The question before this court is whether such action comports with the regulation concerning administrative reprimands. *See* para. 75*d*, Manual, *supra.* We conclude that it does not. *See also* Article 37, UCMJ, 10 U.S.C. § 837.

The action of the commanding officer as represented by trial counsel was clearly intended to be punitive, not corrective, in nature. The stated purpose was to aggravate the punishment that the upcoming court-martial would award the appellant. This is not a purpose consistent with the letter and spirit of the administrative reprimand regulation. Moreover, this action by the commanding officer was not intended as a management tool but rather as a means to influence the outcome of a court-martial. While admittedly great discretion is given by the administrative reprimand regulation to commanding officers in the use of this management device, no valid argument can be made that it extends to the deliberate influencing of a court-martial in the military justice system.[6] *See* Article 37. Accordingly, we do not believe this administrative reprimand with accompanying documentation was issued and properly maintained in appellant's UIF in accordance with the letter or spirit of this regulation for the purpose of paragraph 75*d*, Manual, *supra. Cf. United States v. Cook, supra.*

Since no other Manual provision is proffered to lawfully permit its admission at the court-martial, this prosecution exhibit was not properly before the court members. *Compare* paras. 75*b* (2) *with* 76*a* (2), Manual, *supra,* and *United States v. Worley,* 19 U.S.C.M.A. 444, 42 C.M.R. 46 (1970).

## II

The second question to be resolved is whether the appellant was substantially prejudiced by the erroneous admission of this evidence during the sentence portion of his court-martial. Article 59(a). We believe that he was so prejudiced for several reasons.

First, we are not "confident that the improperly [admitted] evidence had an imperceptible effect" on the court members' "determination of a just and adequate sentence in this case." *United States v. Montgomery, supra* at 40, 42 C.M.R. at 232. This evidence concerned an act of criminal misconduct in the civilian community allegedly committed just prior to his court-martial for the larceny offense. This was the only evidence in the case of the appellant's involvement with law enforcement authorities (*cf. United States v. Montgomery, supra*), and it characterized the appellant clearly as a recent and repeated criminal offender.[7] In addition, the particular act of

---

6. Judge Cook's dissent suggests that other general regulatory provisions concerning Unfavorable Information Files would permit administrative reprimands to be issued for alleged criminal misconduct in the civilian community and included in this file to lawfully influence a court-martial. *See* paras. 2 and 9, AFR 35–32. In view of the restrictive nature of paragraph 5b(2), this regulation, interpreted in this way, would be internally inconsistent. Moreover, it is paragraph 75*d*, Manual, *supra,* and paragraph 5–13, AFM 111–1 (March 1979) which permit the lawful use of these files at courts-martial and not paragraphs 2 or 9, AFR 35–32. In any event, a normal reading of these provisions indicates that they were not intended to apply to court members in their sentencing function at court-martial:

    2. *Purpose of UIFs.* UIFs provide the commander and other responsible personnel with a repository of substantiated derogatory information concerning the Air Force mem-

ber's personal conduct and duty performance which may form the basis for administrative, personnel, or judicial actions against an individual. Commanders should guard against the misuse of the UIF for recording trivial incidents.

    .    .    .    .    .

    9. *Access to UIFs.* The individual on whom a UIF exists and his or her immediate commander have routine access to the UIF. Personnel requiring access to UIFs in the performance of their official duties, such as Inspector General representatives, Staff Judge Advocates, and other responsible personnel are permitted access as authorized by the Director of Personnel or CBPO chief (see table 1.1, rule 7). UIFs are not furnished to promotion or selection boards.

7. The prosecution also introduced evidence that the appellant received an administrative reprimand in May 1979 for failing to attend course 5 of drivers' training school. Trial

misconduct was arson or firebombing an individual's home by means of a molotov cocktail in an act of revenge. This is substantial in character because of the aggravated nature of such an offense. *See generally* Clark and Marshall, *A Treatise on the Law of Crimes* §§ 13.09–13.13 (7th ed. 1967). Such evidence was clearly inflammatory because of the aura of violence surrounding such an alleged offense and the serious danger it presents to life or property. *See generally United States v. Roberts*, 18 U.S.C.M.A. 42, 39 C.M.R. 42 (1968); Munster and Larkin, *Military Evidence*, § 5.3a(2) (2nd ed. 1977). Finally, the offense for which the appellant was convicted at this court-martial was a non-violent act of criminal conversion which paled before the above-described act of criminal misconduct in the civilian community. *Cf. United States v. Montgomery, supra.* In view of the above and the severe sentence adjudged in this court-martial, our misgivings as to its impact on the members are justified. *See generally United States v. Dukes,* 5 M.J. 71 (C.M.A.1978).

■ Second, trial counsel compounded the prejudicial error in the present case. He not only made repeated references to this uncharged criminal misconduct in his cross-examination of appellant but chose to make such evidence a cornerstone in his sentencing argument before the members. He stated unabashedly:

> You have a fire bombing. A premeditated, discussed, rational, striking out at a residence in Clovis, New Mexico with a Molotov cocktail and in an effort to avoid detection; a malicious act, an act which was admitted to you under oath. *We submit to you, when considered alone,*

*although it is not charged, it would certainly demand the maximum punishment in this case. But when it's added to the charge of larceny, and the circumstances surrounding that crime, it demands it.*

(Emphasis supplied.) This is an open invitation to the court members to punish the appellant at this court-martial for the alleged civilian offense. This is clearly improper and unfair comment by the prosecutor even if the evidence was admissible at court-martial.[8] Other references were made in trial counsel's argument to the effect that this inadmissible evidence demonstrated that the appellant was a "bad person" deserving a severe punishment at this court-martial. Such affirmative exploitation of the inadmissible evidence by trial counsel further convinces us that the appellant was substantially prejudiced during the sentence proceedings by the erroneous admission of this evidence. *See generally United States v. Shamberger,* 1 M.J. 377 (C.M.A.1976).

In closing, we find that the military judge prejudicially erred when he admitted during the sentencing portion of appellant's court-martial prosecution exhibit 4 which contained evidence of his alleged civilian misconduct. Of course, we are aware that restrictions on the admissibility of evidence have been generally relaxed for the purpose of sentencing after a finding of guilty has been returned. *United States v. Mack, supra* at 316. Nevertheless, this general policy must be construed in light of the President's formal decision to utilize a more restricted sentencing procedure in our military justice system than that operating in the federal civilian criminal courts. His

---

counsel argued that the appellant was a repeated criminal offender.

8. In view of the administrative nature of this evidence as defined in service regulations, its primary relevance for sentencing purposes is to show the appellant's past record of poor performance and conduct as a member of the Air Force. *See generally* Section C, paras. 19–23, AFR 35–32. Moreover, under paragraph 76a (2), Manual, *supra*, evidence of uncharged criminal misconduct, if properly admitted under paragraph 75d, Manual, *supra*, might argu-

ably be relevant to show the evil disposition or bad character of the appellant for purposes of sentencing. *United States v. Worley,* 19 U.S.C. M.A. 444, 42 C.M.R. 46 (1970). Trial counsel made no particular reference to the administrative implications of this evidence in his argument before the members. Assuming this evidence was admissible, trial counsel at the very least confused the members as to the remaining permissible use of this evidence and their duty as the sentencing body at this court-martial. The military judge sat mute.

rule-making in this matter should not be deliberately frustrated by regulatory artifice or ambiguity, or either's exploitation by the trial counsel or a commanding officer. *See* Article 36, UCMJ, 10 U.S.C. § 836.

██ In a similar vein, it must be remembered the sentencing body in the military justice system, as in the present case, may be the lay members of a court-martial rather than a military judge. *See United States v. Montgomery, supra* at 39, 42 C.M.R. at 231. *Cf.* ABA Standards, Sentencing Alternatives and Procedures § 1.1. (1968). In such a system of criminal justice, the military judge must act in a manner to ensure the integrity of the court members as impartial and properly informed decision makers. *See United States v. Mack, supra* at 319; *see generally United States v. Graves,* 1 M.J. 50 (C.M.A.1975). Such a reality in the military justice system substantially affects the exercise of discretion by the military judge in the array of information he may permit to go before the members on the question of sentencing and in his decision to *sua sponte* instruct them concerning the permissible use of such evidence. In this light, he should be particularly sensitive to probative dangers which might arise from the admission of uncharged misconduct evidence during the sentence procedure which, though relevant or even admissible, would unduly arouse the members' hostility or prejudice against an accused. *See McCormick on Evidence* § 185, pp. 438–41 (2nd ed. 1972).[9] No such action was taken by the military judge in appellant's case. *See generally United States v. Milburn,* 8 M.J. 110 (C.M.A.1979).

The decision of the United States Air Force Court of Military Review is reversed as to sentence. The record of trial is returned to the Judge Advocate General of the Air Force for submission to that court for reassessment of the sentence or to order a rehearing on sentence.

Chief Judge EVERETT concurs.

COOK, Judge (dissenting):

At the outset, I disavow the majority's projection of a purpose on the part of the commander who initiated the challenged unfavorable information to exert improper command influence upon the court members. As to the merits of the issue before us, I am certain that the unfavorable information was filed in strict conformity with the regulation on the subject and the use made of it at accused's trial comported with the prescribed rules for the admission of such matter for sentence consideration.

Prosecution exhibit 4 is comprised of two letters of reprimand; one was rendered in May and the other in August, 1979. The latter was predicted upon accused's involvement in the so-called "firebomb" incident in the civilian community. The reprimand included substantiating documents, among which were an investigative report by a detective of the Clovis, New Mexico, Police Department and a confession by the accused.

Defense counsel interposed two objections to the reprimand. The first objection went to the admissibility of the entire letter. It had three parts: (1) that a letter of reprimand could not be predicated upon the incident because the accused had been criminally charged by civilian authorities, but had yet been tried; (2) that the letter had been "maliciously" and "hurriedly" placed in the Unfavorable Information File (hereafter referred to as UIF) before the convening of the court-martial in order "to aggravate" the sentence; and (3) that in the absence of a conviction by a civilian court, the letter "would unjustly inflame the members of the" court-martial. The second objection went to the admissibility of "the investigative report," which the accused's commander had determined should be filed in the UIF as documentation for the letter. However, in his later *Goode*[1] response to the staff judge advocate's post-trial review, defense counsel acknowledged he was "aware of the law allowing commanders to

---

9. *See* Fed.R.Evid. 403 and Mil.R.Evid. 403.

1. *United States v. Goode,* 1 M.J. 3 (C.M.A. 1975).

give ... [letters of reprimand] even though no conviction has resulted," and he conceded that putting the letter "on the record" was "[l]egally right."

Disregarding defense counsel's post-conviction assessment of the issue he raised at trial, by Brothers say, variously: (a) an administrative reprimand is a "management tool" that is used for correction of conduct, so, consequently, it cannot be used as punishment; (b) as the reprimand was predicated upon "alleged civilian misconduct," its purpose "did not comport with service regulations which define the administrative reprimand" that can be properly filed in a UIF; (c) that the reprimand in issue was "not intended as a management tool but rather as a means to influence the outcome of a court-martial." These statements lead the majority to conclude that the reprimand was not "properly maintained in appellant's UIF in accordance with the letter or spirit of [the] service regulations."

What the majority perceive as an invidious attempt to improperly influence the sentence determination of a court-martial I see as a judicially-sanctioned means of placing confessed misconduct before a court-martial for sentence consideration.

## I

### The General Admissibility of a Letter of Reprimand for Sentence Consideration

Paragraph 75*d*, Manual for Courts-Martial, United States, 1969 (Revised edition), authorizes placing before a court-martial for sentence consideration military personnel records of an accused that reflect "past conduct" and are permitted to be so used by regulation of the Secretary of the accused's service. Air Force Manual 111–1 (C4) (Mar. 5, 1979), prescribed by the Secretary of the Air Force, authorizes use of personnel records "maintained by the CBPO (Consolidated Base Personnel Office) in accordance with Department of the Air Force Regula-

tions or Directives." The UIF is a qualified personnel record. Air Force Regulation 35–32 (C2) (July 10, 1978), para. 3. *See United States v. Cisneros*, 11 M.J. 48 (C.M.A.1981). The question, therefore, is whether the documents extracted from accused's UIF were made in conformity with the governing Air Force regulation.

## II

### The Air Force Regulation on the UIF

Air Force Regulation 35–32 (Sept. 22, 1975) with changes [2] controls the maintenance, in the UIF, of adverse information against a member of the Air Force. The UIF is described as the "repository of substantiated derogatory information," and recourse to it is allowed "for administrative, personnel, *or judicial actions against,* an individual." Para. 2 (emphasis supplied). The file has two classes of unfavorable information. One class is comprised of adverse items that must be filed, para. 5b; the other consists of unfavorable information "determined" by the Air Force member's "immediate commander or higher authority" to be "appropriate" for inclusion in the UIF. Para. 5a. As the regulation read at the date of trial, among the items required to be filed were "[r]ecords of punishment under Article 15"; "[o]rders announcing court-martial convictions"; and "[i]nformation pertaining to drug abuse." Paras. 5b(1), (3), and (5), respectively.

Purporting to act as authorized by the regulation, accused's commander declared he had determined that the adverse information in issue "should be filed in the UIF." We are impelled, therefore, to determine whether, under the regulation, a letter of reprimand could be issued for criminal conduct by an Air Force member in the civilian community, and whether the official investigative report by a detective of a municipal police department and the unchallenged confession of the Air Force member could be determined to be appropriate for filing in the UIF.

2. All references to paragraphs in this opinion are to AFR 35–32 (C2) (July 1978) unless otherwise indicated.

## III

### *The Investigative Report and Accused's Confession as Appropriate Matter for Filing in the UIF*

Paragraph 5 deals with the "[c]ontents" of a UIF. Paragraph 5a provides that it "may include," but is "not limited to . . . correspondence or documentation as determined appropriate for file . . . that substantiates or records:

(7) A copy of an administrative letter of reprimand or admonition not pursuant to Article 15, UCMJ or court-martial.

Here, the accused's commander issued an administrative reprimand to accused not pursuant to Article 15 or court-martial. Presently, I shall consider the propriety of the reprimand. My concern at this point is with the propriety of inclusion in the UIF, as substantiating documentation for the reprimand, of the investigator's report and the accused's unchallenged confession. I have no doubt whatever that these writings constitute "documentation" for the letter of reprimand and, therefore, could properly be declared "appropriate for" filing in the UIF to substantiate the reprimand.

At the time of accused's trial, certain kinds of documentation could be filed without apprising the individual thereof. In this group were a reference to conduct by the service member contained in "Serious Incident Reports" or Reports by the Office of Special Investigations, and a record "of punishment under Article 15." Other kinds of documentation "reflecting unfavorable information" had to be first referred to the individual for rebuttal or mitigation and the individual's response became "an integral part of the basic unfavorable information." Para. 6a. Additionally, the commander had to notify the individual of his decision that the adverse matter was appropriate for filing in the UIF.

The record shows the commander notified the accused in writing of his intention "to place" the substantiating documents to the reprimand in his UIF. He also advised the accused of the consequences of such filing, and of his right to "refute the allegation(s)" by any statement or document. In writing, the accused acknowledged receipt of the notification and advice but declined to comment or to submit anything for the commander's consideration. The next day, by second endorsement addressed to the "Consolidated Base Personnel Office, the custodial office of the UIF (Section A, para. 3), the commander attested he had determined that the reprimand and the substantiating "information should be filed in the [accused's] UIF."

Facially, the information filed and the procedures to effect the filing comported exactly with the provisions of AFR 35–32 that have been mentioned. My Brothers do not explicitly deny that the proper procedure was followed or that the investigative report and the confession constitute substantiating documentation for the letter of reprimand. In my opinion, those documents qualify for filing in the UIF under paragraph 5a of the regulation, as "documentation . . . that substantiates" the letter of reprimand. Consequently, if the particular letter of reprimand is itself an unfavorable information item that can properly be included in the UIF, the investigative report and the accused's confession were admissible in evidence under paragraph 75*d*, Manual, *supra*, and AFM 111–1, para. 5–13*e*.

## IV

### *The Propriety of Predicating an Administrative Letter of Reprimand Upon Misconduct in the Civilian Community that is the Subject of a Civilian Criminal Proceeding*

My Brothers maintain that the letter of reprimand in this case "did not comport" with the service regulation that defines the administrative reprimand and, therefore, does not qualify for admission into evidence under the terms of paragraph 75*d*, Manual, *supra*. Let us, therefore, examine the provisions respecting an administrative reprimand and the alleged deficiencies of this reprimand that induce my Brothers to bar it, as a matter of law, from inclusion in accused's UIF.

Section C, AFR 35–32, is entitled "AD-MINISTRATIVE REPRIMANDS AND ADMONITIONS." It contains five paragraphs, numbered 19 through 23. Number 19, captioned "General Information," notes the scope of the section and specifically disclaims an intention "to constrain the discretionary authority or flexibility of commanders" in the issuance of such letters. Number 20 is entitled "Definition." It reads as follows:

> Administrative reprimands and admonitions are management tools available to commanders, supervisors, and other superiors to reprove and instruct subordinates for departing from acceptable norms of performance, conduct, or bearing. They are corrective rather than punitive in nature. They may be either verbal or written, as deemed appropriate to correct the identified deficiency. If written, no required format is prescribed. A reprimand is more severe than an admonition and carries a strong implication of official censure.

Paragraph 21 is discussional, not directory. It explains that no statute provides for the issuance of administrative reprimands and admonitions but that the authority to do so is "inherent" in "the superior and subordinate relationship" between a commander and those subject to his authority, which has existed "since the very inception of our military force." The paragraph further remarks that these administrative actions serve "to correct and train" a subordinate and "should not be confused with" similarly-described measures that are "punitive" in nature because imposed either by a court-martial or as punishment under Article 15. Number 22 repeats and elaborates on the remarks in number 21. Thus, the paragraph again points out that commanders possess "inherent authority to ensure that their subordinates maintain the highest standards of . . . conduct" and that a deviation from those "standards may be brought to the attention of" wayward sub-ordinates "in the form of an administrative reprimand or admonition." "[J]udicious use" of this "method of correction," observes the paragraph, can be "an effective management device to assist in maintaining Air Force standards and accomplishing the Air Force mission."

The final paragraph of Section C, number 23, prescribes certain actions by the commander and the individual concerned to qualify an administrative reprimand or admonition for filing in the UIF. It begins with the declaration that the "commander has *the authority to decide* whether a written administrative reprimand or admonition . . . will be placed in the individual's UIF." (Emphasis supplied.) Thereafter, the paragraph enumerates the actions that qualify the reprimand or admonition for filing. The enumeration appears in subdivisions a, b and c of the paragraph.[3] Except for those noted under paragraph 23c, the actions are set out below in the same sequence in which they appear in the regulations but in somewhat restated form.

## AS PROVIDED BY PARAGRAPH 23a.

1. The commander must refer the written administrative reprimand or admonition to the individual affected.

2. The commander must obtain evidence of the referral in one of two forms:

   a. A written acknowledgment by the individual of receipt of the referred document; or

   b. "[A] statement documenting refusal to acknowledge" receipt of the referred document by the individual.

## AS PROVIDED BY PARAGRAPH 23b

3. The commander must afford the individual "a reasonable opportunity . . . [to] submit a statement in extenuation, mitigation, or rebuttal together with any supporting documentation."

---

**3.** The paragraph also has two other subdivisions, d and e, but these are irrelevant here as they pertain, respectively, to later withdrawal of an administrative reprimand or admonition (as provided in paragraph 6b) and to the reprimand or admonition of an individual "performing temporary duty . . . away from [his] assigned unit or permanent duty station."

4. The individual may decline "to submit a statement." If he does, "he . . . should acknowledge in writing . . . [that he] was afforded the opportunity . . . and elected not to do so." [4]

## AS PROVIDED BY PARAGRAPH 23c

5. On receipt of a statement, or a "declination to make a statement," from the individual concerned, "the commander [must] reevaluate the correspondence to determine its suitability for placement in the . . . UIF."

6. If the individual's response "completely" dissuades the commander from carrying out his declared intention to place the reprimand in the UIF, and in the commander's judgment no other reason warrants retention of the information in another file known as the Unit Assigned Personnel Information File, the commander is enjoined to destroy the information.

7. However, "[i]f the commander is not completely dissuaded by the individual's" response, he can take any of the following actions that he "deems . . . appropriate":

a. He can forward the "correspondence . . . for placement in the member's UIF."

b. Instead of filing the reprimand in the UIF, he can place it in the Unit Assigned Personnel Information File. If he places it in the Personal Information File, he "cannot later reverse that decision and place . . . [the reprimand] in the UIF" but he still can use "the information . . . in connection with other personnel and administrative actions."

c. He can destroy the correspondence if it "originated with" him, or he can "return it to its source."

As indicated earlier in regard to the investigative report and accused's confession, every action required by the regulation for placement of the reprimand in accused's UIF was accomplished. However, defense counsel contended at trial, and my Brothers apparently agree, that the actions are improper because they were hasty and prompted by a desire to get the letter into the file in time to qualify it for admission into evidence against the accused. Preliminarily, I emphatically reject their insinuation that trial counsel was the puppet of the commander.[5] As to the propriety of the actions taken, I discern no justification whatever to condemn them.

Looking first at the pace at which the actions proceeded, it is important to bear in mind that the accused never asserted before trial, and defense counsel never contended at trial, that the time allowed the accused to respond to the requisite notifications was unreasonably short. In my opinion, the trial judge and the Court of Military Review could reasonably find that the time allowed the accused for each response "was reasonable."

Unlike Article 35, Uniform Code of Military Justice, 10 U.S.C. § 835,[6] which forbids,

---

4. The provision does not indicate what should be done if the individual refuses to acknowledge he was afforded the opportunity to submit a statement. The endorsement on the Notification of Unfavorable Information that is part of the documentation for the letter of reprimand in issue appears to require that the individual record the fact of his opportunity to reply and his election not to submit any statement or documentation. Considering that the regulation contemplates that the individual be apprised of the unfavorable information and of the commander's intention to include it in the UIF and also that the evidence of the individual's response to the "notification" be memorialized in the record, I am inclined to construe this provision as imposing as obligation upon the individual to record the requisite acknowledg-

ment. *See* items 5 and 6 in the text enumeration of the provisions of paragraph 23.

5. *United States v. Johnson*, 4 M.J. 92 (C.M.A. 1977) (Cook, J., dissenting). *See also* my opinion in *United States v. Hardin*, 7 M.J. 399, 405 (C.M.A.1979).

6. In pertinent part, Article 35, Uniform Code of Military Justice, 10 U.S.C. § 835, provides as follows:

The trial counsel to whom court-martial charges are referred for trial shall cause to be served upon the accused a copy of the charges upon which trial is to be had. In time of peace no person may, against his objection, be brought to trial or be required to participate by himself or counsel in a session called by the military judge under sec-

over the objection of the accused, initiation of trial within a time less than that prescribed, the regulation imposes no time restraints other than that allowed the individual to respond to notification of intention to include specified unfavorable items in his UIF. As the commander complied with that provision, the shortness of the interval between his determination to issue the letter of reprimand and its placement in the UIF cannot be transmogrified into a violation of the language or the spirit of the regulation. Additionally, paragraph 75d, Manual, *supra*, prescribes no minimum time for the preparation of an official record of "past conduct" of an accused as a condition precedent to the admissibility of the record. The only requirement of the Manual is that the record be "maintained in accordance with departmental regulations." As the time requirement in respect to the accused was met, the commander cannot be condemned because he performed his own official actions with dispatch.

Turning to the commander's alleged "purpose ... [to influence] the appellant's ... court-martial," I see no evil in placing the unfavorable matter in the UIF so that it could qualify as sentence evidence against the accused. Unfavorable information in the UIF is explicitly qualified for use as a "basis for ... judicial actions against an individual." Para. 2. I discern no illegality whatsoever in the timely accomplishment of official action to assure that a court-martial is *legally* informed of matters it is allowed to consider in its deliberations on sentence.

From their references to a civilian conviction, I suppose the majority would not condemn an expeditious effort to place such a conviction in an accused's UIF to allow its use at an impending court-martial. Surely what is lawful as regards a civilian conviction is lawful as regards a valid administrative reprimand. Thus, if the reprimand is valid, then a "purpose" to have it included in the UIF for use at accused's court-mar-

tial is a lawful purpose; certainly, it is a purpose sanctioned by the regulation. I, therefore, unqualifiedly reject the majority's postulate that issuance of a valid letter of reprimand, with the intention to qualify it for consideration by a court-martial in the event of conviction of the individual concerned, is pernicious influence upon the court-martial of the kind condemned under the rubric of "command control." *See United States v. Gewin*, 14 U.S.C.M.A. 224, 34 C.M.R. 4 (1963); *United States v. Davis*, 12 U.S.C.M.A. 576, 31 C.M.R. 162 (1961).

A seemingly different substantive consequence of the commander's "purpose" appears in the majority's implication that the letter of reprimand was really a sham. Thus, the majority say the commander "intended [the reprimand] to be punitive, not corrective, in nature." If a particular letter of reprimand could possibly have a consequence associated with a punitive reprimand, which no other administrative reprimand could have, then perhaps such a reprimand could not be used as it would be a pretext for accomplishment of an illegal act. *See United States v. Santo*, 20 U.S.C. M.A. 294, 43 C.M.R. 134 (1971). However, the majority acknowledge that the "punitive" purpose they perceive is the use of the letter of reprimand "to aggravate the punishment that the ... court-martial" might adjudge. As I said before, a purpose to provide evidence of officially recorded unfavorable "past conduct" is legal. It is legal because it is expressly provided for by paragraph 75d, Manual, *supra*, and it is the declared purpose of paragraph 2 of AFR 35–32.

No evidence whatever exists to support a finding that the administrative reprimand was a pretext to do indirectly what the commander could not do directly. I, therefore, reject the majority's intimation that imposition of the administrative reprimand was a fraud or a sham to punish the accused, not a means to correct his conduct.

tion 839(a) of this title (article 39(a)), in a general court-martial case within a period of five days after the service of charges upon

him or in a special court-martial within a period of three days after the service of the charges upon him.

I turn now to the remaining apparent justification for reversal of the trial judge's ruling that the majority proffer. They indicate that the accused's misconduct in the civilian community could not be a proper predicate for the reprimand because the civilian charge had not yet been "finally resolved by civilian authorities." As a matter of general law, an administrative proceeding predicated upon conduct that constitutes a crime is not barred by either the pendency of criminal proceedings or an acquittal. *Finfer v. Caplin*, 344 F.2d 38 (2d Cir. 1965), *cert. denied*, 382 U.S. 883, 86 S.Ct. 177, 15 L.Ed.2d 124 (1965); *Polcover v. Secretary of Treasury*, 477 F.2d 1223 (D.C. Cir.1973), *cert. denied*, 414 U.S. 1001, 94 S.Ct. 356, 38 L.Ed.2d 237 (1973). Also, as a matter of general law, the fact that a matter is pending in one tribunal does not, by itself, operate to stay proceedings on the same matter in another tribunal in a different jurisdiction.[7] I know of no general rule of law that precludes a military commander from taking administrative action against a member of his command because the factual predicate for the action is that the member's conduct may also be the subject of a civilian criminal prosecution. The question then is whether paragraph 75*d*, Manual, *supra*, or AFR 35–32, forbids it.

In the discussion in Part I implying that an administrative reprimand based on a confessed crime in the civilian community is not a proper predicate for an administrative reprimand, the majority refer to three statements in the regulation. These statements are extracted from paragraphs 20 and 22. In different order than presented in the majority's discussion, they are as follows:

(1) That an administrative reprimand "is a 'management too[l]' ". The characterization is taken from the first sentence of paragraph 20 which, as noted earlier, reads in part: "Administrative reprimands . . .

are management tools available to commanders . . . to reprove and instruct subordinates."

(2) That a "judicious use of" this "effective management device" is apparently demanded by the regulation. As the words "judicious" and "effective" appear only in paragraph 22, that paragraph must be the basis for the majority's implied conclusion that an administrative reprimand cannot be filed in the UIF unless it is demonstrably "judicious" or "effective."

Primarily, paragraph 22 discusses the purpose of an administrative reprimand. The discussion does not demand that a reprimand *be proven* "effective" before it can be filed in a UIF. It declares only that "judicious use of administrative reprimands . . . renders them an effective management device to assist in maintaining Air Force standards and accomplishing the Air Force mission." Thus, effectiveness is a consequence of, not a prerequisite to, issuance of a reprimand or a determination that the reprimand be filed in the UIF.

As to "judicious use" of the administrative actions, I do not construe these words as subjecting an administrative reprimand to review by a military judicial tribunal, whether trial or appellate. The emphasis of Section C of the regulation is on the commander's role as a commander. The very first paragraph, number 19, stresses that the intent of the regulation "is not . . . to constrain the discretionary authority or flexibility of" the commander. The second paragraph points out that the commander's authority to issue an administrative reprimand "derives from the inherent authority and responsibility" he possesses as a commander "to correct and train those under his . . . command." The words "judicious use," therefore, do not imply that a court-martial can reject an administrative reprimand as evidence because it believes its

---

7. *See* my opinion in *United States v. Saulter*, 5 M.J. 281, 285 (C.M.A.1978). Nor does the constitutional protection of double jeopardy apply in respect to concurrent criminal proceedings in both federal and state courts for an act that is a crime under the law of each sovereign.

*See United States v. Wheeler*, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978); *Cordova v. United States*, 537 F.2d 1073 (9th Cir. 1976), *cert. denied*, 429 U.S. 960, 97 S.Ct. 385, 50 L.Ed.2d 327 (1976).

issuance was an injudicious use of the commander's authority. "Judicious" is commonly defined as "showing sound judgment; wise and careful." Webster's New World Dictionary at 792 (College Ed.). If a court-martial believes an administrative reprimand proffered for sentence consideration does not reflect "sound judgment" or "wise and careful" deliberation in its issuance, it can disregard the reprimand in imposition of an appropriate sentence, but it cannot, under paragraph 75d, Manual, *supra*, and the supplementing provisions of AFM 111–1, *supra*, declare it inadmissible in evidence.

Putting aside my construction of AFR 35–32, section C, and accepting that of the majority, I am certain that issuance of the administrative reprimand in this case was not only a "wise and careful" act, but a necessary one. Let us look at the underlying facts.

At about 0500 hours on Saturday morning, August 4, 1979, at the home of Tony Garcia Sr. in Clovis, New Mexico, his sons and some of their friends had "a fight with a group of airmen from Cannon Air Force Base." Airman Henry Lopez had to be hospitalized at the air base "as a result of injuries received in the fight." Airman Flewallen was one of the other airmen in the fight. During the remainder of the day, Flewallen, Airman Strobaugh, and the accused discussed the fight. They considered how "to get back at the people that had beat up Lopez." "Late Saturday," apparently when the group was about to separate, the accused declared that when the others could agree, they should let him "know and we'd go do it."

Flewallen or Strobaugh called the accused at about 7:00 or 8:00 p. m. on Sunday, August 5, to determine if he "was ready to go." They arranged for a meeting at the apartment of another airman who had been with Lopez in the fight. At that apartment, they watched TV until about 11:30 p. m.; then they left to drive to Garcia's residence. Strobaugh and Flewallen went on a borrowed motorcycle, with Strobaugh driving and Flewallen "on the back." After "a few trips around" Garcia's house, they "hit the place." Flewallen and the accused threw several "molotov cocktails." Some burned "a door" of Garcia's house; one landed on Garcia's automobile which had been "parked in front," and caused slight damage.

About 2355 hours, Garcia called the Clovis police to report the incident. Detective Crooks and Officer Farley went to Garcia's home. Garcia spoke of the fight between his sons and the airmen and indicated that he "felt that" the nonhospitalized airmen "could be involved in the arson." Detective Crooks went to the base hospital to interview Lopez. He learned from Lopez the names of the other airmen who "had been with him at the time of the fight."

On August 7, Detective Crooks questioned Flewallen at the Clovis Police Department. Flewallen admitted that Lopez was his friend and that he, Strobaugh, and the accused "decided to get even" for the beating administered to Lopez "by throwing molotov cocktails at the residence." At about 7:40 p. m., Detective Crooks questioned the accused. After full advice as to his right to remain silent and to have counsel present, the accused signed a written waiver of rights. He was then sworn and he made a written statement, which he signed under oath, confessing to his participation in the events indicated. At the end of the written statement is a sworn certification to the effect that the accused had "read [the] statement," that he had "made no request for" counsel "before or during" the making of it, that he had not been "prompted" or told "what to say," that he understood "the contents of" the statement and they "are true and correct."

Accused, Flewallen and Strobauch "were arrested and charged with arson." The accused was then 18 years of age and had been in the Air Force for 8 months. According to a post-conviction statement by him, he "expected to receive a probated sentence" in the civilian court. After trial, the commander who issued the reprimand submitted a clemency report. In it, he stated that, despite the accused's involvement in the civilian incident, he believed the accused's "self admission" made "rehabilitation ... appropriate," and, in his opinion, the accused had "the potential to be re-

turned to service and complete his obligation honorably." [8]

Since *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), a crime committed in the civilian community which also violates a punitive article of the Uniform Code cannot, constitutionally, be tried by court-martial, unless the offense has military significance or a military connection. By August 1979, opinions by this Court would most likely have impelled a military lawyer to conclude that the offense committed by the accused in the civilian community could not be tried by court-martial.[9] Nevertheless, the accused's commander could not disregard the incident. No injury had been done to the accused, but he had willingly joined other airmen in the commission of a civilian crime. Obviously, there was a lesson he had not learned in his 8 months of service. That lesson was that there is a polar difference between helping a fellow airman threatened with illegal harm in the civilian community and affirmatively joining a fellow airman to commit a crime against a civilian in the civilian community. Although on its face, the accused's conduct constituted a serious crime, it was also obvious that, as no serious injury resulted, the accused's youth and military status were likely to induce the civilian authorities to treat him leniently. In this situation, it would not, in my opinion, have been "judicious" for the commander to disregard the incident and make no effort "to reprove and instruct" the accused "for departing from acceptable norms of ... conduct." Para. 20.

Paragraph 75d, Manual, *supra*, provides that an accused can object to material obtained from a personnel record on the ground that it is "inaccurate or incomplete in a specified material particular," or that it contained "specified objectionable matter." Trial defense counsel made an impassioned plea to exclude the investigative report and accused's confession, but he did not assert, directly or indirectly, that any parts of these documents were "inaccurate or incomplete." Neither did counsel contend that the accused's confession was involuntary or subject to any other disability that would require its exclusion from evidence in any court; he said only that "[t]here has not been a trial on the merits downtown to determine if, in fact, the admission was made voluntarily and if all the procedural safeguards were followed." The documents themselves fully establish compliance with the constitutional requirements as to the preliminary advice that must be provided a person subject to custodial interrogation. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Paragraph 75d of the Manual provides that "[o]bjections not asserted will be regarded as waived." That no proper basis for an objection existed is manifest from accused's later sworn testimony. On direct examination, he acknowledged his participation in the criminal conduct and represented "it was a spur of the moment thing." He assured the court members that on the basis of "what ... [he knew] now," which presumably included the administrative reprimand, he "would be far from trying to attempt [such incidents] again." On cross-examination, the accused admitted that the statement in which he acknowledged his understanding of his rights and his surrender of them was written in his "own handwriting." As no "inaccurate or incomplete" or otherwise "objectionable matter" appears in the letter of reprimand and its substantiating documents and no objection was made, trial counsel was entirely correct in offering the documents into evidence, and the trial judge was correct in admitting them into evidence.

For the reasons indicated, I would affirm the decision of the Court of Military Review.

---

8. I am certain that the reasonable inference from the facts, including the brevity of the interval between issuance of the administrative reprimand on August 15 and the date of the clemency report (September 18—which was 6 days before the convening authority acted on the case) is that the commander had the same opinion of the accused when he issued the reprimand that he had of him when he submitted his post-clemency report.

9. *United States v. Alef*, 3 M.J. 414 (C.M.A. 1977); *United States v. McCarthy*, 2 M.J. 26 (C.M.A.1976); *United States v. Hedlund*, 2 M.J. 11 (C.M.A.1976).